TASCO DEVELOPING AND BUILDING CORPORATION et al.,
Appellees,

*v.*

JOHN R. LONG, Commissioner of Insurance and Banking,
et al., Appellants.

368 S.W. 2d 65.

*(Nashville,* December Term, 1962.)

Opinioin filed May 10, 1963.

John T. Conners, Jr., Nashville, for appellees.

George F. McCanless, Attorney General, Thomas E. Fox, Walker T. Tipton, Assistant Attorneys General, Nashville, for appellants.

Phillips, Gullett & Steele, Nashville, W. Harold Bigham, Nashville, of counsel, amicus curiae, on behalf of Tennessee Road Builders Ass'n.

HOWELL & TUCK, Nashville, MORTON B. HOWELL, JR., Nashville, of counsel, amicus curiae, on behalf of Tennessee State Branch Association General Contractors of America.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

The real question for consideration in this lawsuit is whether or not the State Board for Licensing General Contractors has the right, power and authority to classify and limit the license which it issues to general contractors.

The Tasco Developing and Building Corporation and others filed a bill in which they allege that certain rules and regulations of the State Board for Licensing General Contractors were illegal and void, wherein this Board had limited these complainants to contracts not to exceed a specified amount as to each of the complainants. To this bill first a motion was made that the bill should be dismissed because the action of this Board in limiting or classifying these licenses issued to general

contractors is limited to review (statutory certiorari as provided in sec. 27-901 et seq., T.C.A.). This motion was overruled and the Board answered setting up the proposition that under the Act creating the State Board for Licensing General Contractors that the Board had a right to adopt certain rules and regulations, and, having adopted these rules and regulations, these complainants had failed to comply with them in that their licenses were limited in specified amounts and they were therefore precluded from bidding on contracts in a greater amount. The question was heard on bill and answer. After argument, briefs, and a consideration of the matter, the Chancellor entered an injunction enjoining the Board because in his opinion the Board had no authority to classify and limit general contractors' licenses issued by said Board to the complainants. A discretionary appeal was allowed, and after a thorough consideration of the matter in reading the very able briefs of all parties, the record and making an independent investigation of the statutes and authorities, we are in a position to determine the question.

A State Board for Licensing General Contractors was created by Chapter 135 of the Public Acts of 1945. It has been subsequently amended in minor particulars, but these amendments do not affect this lawsuit. This Act is now codified as sec. 62-601 et seq., T.C.A. The Act became effective March 1, 1945, and pursuant thereto either the Board serving under a previous Act, or the Board members appointed pursuant to this Act, adopted certain rules and regulations on April 19, 1945. These rules and regulations so far as this record shows have been followed since that time. The questionable portion (that is as far

as this lawsuit is concerned) is a portion of Section 4 of said rules and regulations, reading as follows:

"Section 4. Applicant for license as a contractor, in order to be accepted and licensed, shall qualify under one or more of the classifications outlined in Section 11 of the Act creating the State Board for Licensing General Contractors and the amendments and the classifications shall be shown on the face of the certificate when issued. A designation of 'small' or 'light' may be placed before a classification. In such instances, projects or contracts exceeding one hundred twenty-five thousand ($125,000.00) dollars, would cease to be 'small' and those exceeding two hundred twenty-five thousand ($225,000.00) dollars would cease to be 'light.' Contractors bidding in excess of their classifications would be in violation of the Act."

It is under this provision of their regulations that the appellees in this lawsuit were so classified. They now question the right of the Board to classify them and say that such regulation is illegal and void because primarily the Legislature did not provide for any such classification and when the Board makes such a classification it is in effect legislating and making laws and that such Board has no right to legislate or make laws, but must follow the law as adopted by the Legislature.

The first Act to our knowledge creating a Board for the purpose of Licensing General Contractors was embodied in Chapter 70 of the Public Acts of 1931. This Act was superseded and repealed by the 1945 Act above referred to. In 1937 by Chapter 156 of the Public Acts of 1937, among other things, the Board was given the power to limit the license to the character of work to

which the applicant was qualified and the maximum contract he may undertake. In 1939 by Chapter 114, the Public Acts of that year, this provision, that is that of 1937, was repealed. It is for this reason, that is, that the Board once having been granted specifically the power to enact such regulation as quoted from Section 4 of their regulations above that the Chancellor bottomed his action herein in holding that the Board does not have a right to classify and limit licenses, because by doing this and then repealing it it was the Chancellor's idea that the Legislature did not intend for the Board to have such power.

The Chancellor failed to take into consideration the fact that subsequent to this action of the Legislature, on which he bases his opinion, that they enacted an entirely new full and complete Act (Chapter 135, Public Acts of 1945) under which the Board has enacted certain rules and regulations which have been effective for some seventeen (17) years at the same time this lawsuit was brought. He likewise failed to take into consideration that in enacting this Act, which is now controlling, that Board instead of being told they could grant a license under a certain particular and not grant it under another particular or this and that and the other thing, the Legislature provided under Section 4 of the Act (Sec. 62-606, T.C.A.) that the Board "shall have the power to make such by-laws, rules and regulations as it shall deem best, providing the same are not in conflict with the laws of Tennessee." This identical provision had been in the previous Acts of 1931. The 1945 Act also provided that any rules and regulations which the Board had been acting under the 1931 Act which were in effect on the day of the adoption of the 1945 Act, "shall remain ef-

fective until changes are made by appropriate action of the board." Sec. 62-607, T.C.A. All these things are necessary for a proper solution of the question here involved.

Of course, an administrative body of this kind which is given legislative power to make rules and regulations does not have the power to make a rule or regulation which is inconsistent with the constitutional provision or other law on the subject, and it does not include the authority to enact laws, or to make rules affecting or creating substantive rights. Said body though does have the power when it is given it by the Legislature to make rules and regulations and in exercising the power thus given it to adopt such rules and regulations as are necessary and reasonable in qualifying general contractors for a license. The only thing that it may not do in this particular is to act arbitrarily and capriciously. This making of reasonable rules and regulations is a delegated legislative power which the body may use so long as the rules and regulations are designed to carry out the duties imposed upon this body, the Board for Licensing General Contractors, wherein these rules are made to effectuate the purpose of the Act creating the body which Act the body is administering. 16 C.J.S. Constitutional Law sec. 133, page 552; 11 Am.Jur., 955, sec. 240.

It is elemental and should be a reasonable logical proposition that if the Legislature undertook to enact everything that was necessary for the hundreds of general contractors on all different things for them to have before a license was given that it would take all the time of the Legislature and books to set forth and specify all these things. It would be impracticable for the Legislature to thus prescribe a specific rule of action in any

license case. This being true a reasonable amount of discretion is necessarily delegated to the administrative officials. See *Marburg v. Cole,* 286 N.Y. 202, 36 N.E.2d 113, 136 A.L.R. 734. Such a rule is particularly applicable to the controversy here. Obviously it would be impractical for the Legislature to cover by statutory enactment the detail and minutia required for the adequate regulation of all general contractors, or to attempt to set up standards that would necessarily involve the same details. This being true, the Act left it to the administrative body to adopt such rules, as they deemed necessary in granting these licenses insofar as they didn't act arbitrarily or capriciously about the matter. This Act, as heretofore said, is codified as Chapter 6, Title 62, T.C.A., and does provide for the making of rules and regulations by the Board which it deems best, but no where in the Act are the things enumerated, the terms and conditions, etc., whereby the license may be granted. It seems obvious therefore to us that the Legislature intended this body to enact reasonable rules and regulations which they have herein.

The caption of this Act, which of course is not codified, shows that it is an Act for the public welfare, its purpose being to protect the general public from contractors who are not qualified to perform work which they have contracted and for which they should be qualified. This Board composed of outstanding contractors in different fields of that work are given certain discretions in forming reasonable rules and regulations for the protection of the public. It clearly seems that they, this Board made up of these experienced contractors, are in a far better position to know what rules and regulations should be adopted by them in granting these licenses

than is the Legislature who are inexperienced in such a field. Apparently, the Legislature thought this when they left to such Board to adopt reasonable rules and regulations as they deem best.

█ If this Board has no such right, what would be the necessity of having a Board? The Legislature could provide that a contractor could get a license for such an amount and he would merely go to the County Court Clerk and buy his license. There would be no necessity for having a Board unless this Board could screen and make reasonable rules and regulations for the conduct of this purpose. It has long been held a cardinal rule so far as we know that statutes should be given a construction that will not render them useless. *First National Bank of Memphis v. McCanless,* 186 Tenn. 1, 207 S.W.2d 1007.

██ We think that in the case of *Department of Public Welfare v. National Help "U" Ass'n,* 197 Tenn. 8, 270 S.W.2d 337, that the arguments and reasons on behalf of the appellees herein have been fully answered and supported by respectful authority. It is true that in this case general contractors were not involved but legal questions of whether or not a Board had the right to make reasonable rules and regulations was involved and for reasons stated in that opinion we think the questions here presented have been answered. A careful reading of this case to which we have referred, *Department of Public Welfare v. National Help "U" Ass'n,* supra, will be a sufficient answer to the entire argument on behalf of the appellees. We, of course, will not again repeat what was there said. The enactment of reasonable rules and regulations and the enforcement thereof is more or less of an administrative character and is not exercising

a legislative power or function. The Legislature of this State may constitutionally delegate to administrative bodies powers to be exercised upon discretion. *Crewse v. Beeler*, 186 Tenn. 475, 212 S.W.2d 39.

■■ Another most compelling reason of why the action of the Chancellor herein is incorrect is the fact that for seventeen (17) years this Act has been in force, regulations on the books, the contractors all having knowledge thereof and having there at their beck and call a copy of these regulations. The Legislature is presumed to know or have known over this period of years that this is true, and that these contractors have been classified during that time under such rules and regulations, and thus it is that we feel that under such circumstances that we as has the Legislature must respect these rules and regulations. Many years ago this Court in *State ex rel. v. Nashville Baseball Club*, 127 Tenn. 292, 154 S.W. 1151, Ann.Cas. 1914B, 1243, said:

> "A construction of a statute or the Constitution, not emanating from judicial decision, but adopted by the legislative or executive departments of the state, and long accepted by the various agencies of government and the people, will usually be accepted as correct by the courts."

This case has been cited many many times as can be found by Shepardizing the matter on various and related propositions as that which we are here talking about in various and sundry situations where Tax Boards and other boards have adopted certain rules and regulations and things of the kind. Thus it is that we feel in addition to what we have said above that for this very compelling reason that since this regulation has been on these books

and these things have happened over this long period of years that we must accept it as a correct regulation enunciated by this Board.

Another reason for the action above indicated would seem to follow by certain language in the revocation section of this Act (Sec. 10, Acts of 1945, as codified in sec. 62-618, T.C.A.) that a revocation may be granted "for a failure to observe the terms and conditions of any license or renewal granted under the provisions of this chapter or any by-laws, rules or regulations adopted and promulgated by it as provided in sec. 62-607, * * *."

For the reasons herein expressed the decree of the Chancellor is reversed, the injunction dissolved, and the matter remanded so that it can be determined whether or not the complainants have been dealt with arbitrarily and illegally by the Board. The determination should be made and a review of any action of the Board as to whether or not such is true should come under the statutory certiorari as provided by sec. 27-901 et seq., T.C.A. The costs of the cause are taxed against the original complainants and sureties on their surety bond.