**HOYER–SCHLESINGER–TURNER, INC.,**
Appellant,

v.

**Thomas D. BENSON, Commissioner of Revenue, State of Tennessee, Appellee.**

Supreme Court of Tennessee.

April 3, 1972.

Frank J. Glankler, Jr., and Michael A. Robinson, Memphis, for appellant; Montedonico, Heiskell, Davis, Canale & Glankler, Memphis, of counsel.

David M. Pack, Atty. Gen., Everett H. Falk, Asst. Atty. Gen., State of Tenn., Nashville, for appellee.

## OPINION

DYER, Chief Justice.

This is a suit by the taxpayer, Hoyer-Schlesinger-Turner, Inc., (herein referred to as HST), to recover sales and use tax paid under protest. The chancellor found HST liable for the taxes and dismissed the bill, resulting in this appeal.

HST entered into contracts with Velsicol Chemical Corporation to design and construct three chemical manufacturing systems in Memphis, Tennessee. HST applied for and was granted permits by appellee, Thomas D. Benson, Commissioner of Revenue for the State of Tennessee, to purchase the personal property needed to fulfill these contracts as industrial machinery, pursuant to T.C.A. § 67–3002(n) and 67–3003(g). Result of the grant of these permits was to allow this personal property purchased as industrial machinery to carry a lower tax of one per cent rather than the normal tax of three per cent. HST paid the lower tax on the industrial machinery, but did not include the labor cost incurred in installing the machinery at the construction site.

After an audit appellee assessed a sales and use tax deficiency as to labor cost allocable to the installation of this industrial machinery, the amount with penalty and interest being $16,123.50.

[1] The issue is whether the labor cost incurred by HST in permanently installing chemical manufacturing systems equipment classified as industrial machinery under T.C.A. § 67–3002(n) is to be included in the tax base for application of the Tennessee Sales and Use Tax rate for industrial machinery.

T.C.A. § 67–3002(n) defines industrial machinery by the following language:

(n) "Industrial machinery" shall mean machinery, including repair parts and any necessary repair or *taxable installation labor* therefor, which is directly and primarily utilized in fabricating or processing tangible personal property for resale, or equipment primarily used for air pollution control or stream pollution control, where the use of such machinery or equipment is by one who engages in such fabrication or processing as his principal business. (Emphasis supplied).

T.C.A. § 67–3003 sets the basic use and sales tax rate at three per cent. However, sub-section (g) of this statute provides a preferential rate of one per cent for tangible personal property defined as industrial machinery by the following language:

Notwithstanding other provisions of this chapter, tax at the rate of one per cent (1%) shall be imposed with respect to industrial machinery as hereinbefore defined.

We construe the intent of the Legislature enacting T.C.A. § 67–3002(n) and 67–3003(g) as applicable to the issue in the case at bar as follows:

When a taxpayer, by his own choice, brings himself within the scope of these statutes and accepts the benefits of the lower rate, he also accepts all of the obligations of these statutes. When the Legislature allows a departure from a basic tax rate to a lower rate, it presumably does so with the intent all statutory provisions of the lower rate be adhered to. This intent is shown by the language of

T.C.A. § 67–3003(g), when the Legislature stated "notwithstanding other provisions of this Chapter." This word "Chapter" refers to Chapter 30 of T.C.A., which encompasses the full statutory scheme of sales and use taxes.

The chancellor in regard to the intent of the Legislature by its definition of "Industrial machinery" in T.C.A. § 67–3002(n), copied with approval from the brief filed by appellee, as follows:

It is apparent from the above definition that the legislature intended to embrace within the class of personal property defined as "industrial machinery" those machines and equipment which are installed as component parts of large, permanent and complex manufacturing systems. The installation of such machines and equipment as component parts of complex manufacturing systems necessarily includes certain fixed and permanent appurtenances, such as foundations, support, piping and wiring, which are essential to the functioning of the machines and equipment as operational units of the manufacturing systems. By its use of the term "installation labor" and by its implied recognition that the use of industrial machinery in fabrication or processing operations necessarily requires permanent installation of the machinery in manufacturing plants, the legislature intended to include in the tax base of industrial machinery the labor cost incurred in the installation of industrial machinery as operational units of such manufacturing systems. The legislature did not intend that industrial machinery would lose its identity as such merely by its affixation to real property during the process of installation. Were such an intention imputed to the legislature, little if any installation labor would be taxable with respect to machinery permanently installed in manufacturing plants which fabricate or process tangible personal property, with the result that the term "taxable installation labor" as used in T.C.A. § 67–3002(n) would be

essentially empty of meaning. It is a well-settled principle of statutory construction that statutory provisions should be construed in a manner that will not render them meaningless or useless. Tasco Corporation v. Long, 212 Tenn. 96, 368 S.W.2d 65 (1963).

We also agree with the above statement.

The record reflects a fair determination was made in the allocation of the labor charges attributable to the installation of the industrial machinery and the labor charges attributable to the improvement of realty. Only the labor charges attributable to the installation of industrial machinery was used as the tax base.

The judgment is affirmed.

CHATTIN, CRESON, HUMPHREYS and McCANLESS, JJ., concur.