**Harry Allan ROCKWELL, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

Dec. 13, 1976.

Richard W. Pectol, Johnson City, for appellant.

R. A. Ashley, Jr., Atty. Gen., Robert B. Littleton, Asst. Atty. Gen., Nashville, S. E. Pat Widener, Asst. Dist. Atty. Gen., Johnson City, for appellee.

## OPINION

TATUM, Judge.

Appellant was convicted of creating a false impression of his death by a forged death certificate. The Washington County Jury fixed his punishment at not less than one nor more than five years in the State Penitentiary. We affirm.

The State's principal witness, Mrs. Wanda Wards, testified to the following facts: About the 5th of July, 1974, appellant requested this witness to fill out a false cer-

tificate of his death. He told her that he was charged with grand larceny in Tampa, Florida and needed the death certificate to convince the Florida Court of his death so that these charges would be dismissed.

Later, appellant brought the witness a blank Death Certificate and a Mortician's Report. The witness enlisted the services of her sister, who was a typist, to type the certificate. Then the witness signed the names of persons purporting to be the physician, medical examiner, funeral director and others whose signatures are required. The witness did not know how to fill out the mortician's portion of the document, so she and her sister borrowed appellant's car and visited a funeral home in order to procure this information. They also procured the license number assigned to that funeral home to be placed on this document.

After completing the certificate, she gave it to appellant. The State's evidence established that this certificate was registered with the Tennessee Department of Public Health, Division of Vital Statistics. Appellant later told her that the charges against him in Florida had been dismissed.

She further testified that she and appellant intended to establish an illegal business of selling forged death certificates to persons charged with crime if this venture had been successful.

Appellant testified that he knew Wanda Wards by sight, but was not acquainted with her and had never had a conversation with her until after "he was supposed to be dead". He testified that at the time Wanda Wards said that he contacted her and subsequent thereto, he was with his girlfriend, Cathy Williams, in Savannah, Tennessee, and later in Atlanta, Georgia. Cathy Williams supported his testimony. He denied any knowledge of any of the matters which were the subject of Mrs. Wards' testimony.

■ We will first consider the question as to whether the testimony of Mrs. Wards is corroborated. Appellant in an excellent brief, urges that it is not. Mrs. Wards was definitely an accomplice. The rule requiring corroboration of the testimony of an accomplice to sustain a conviction is well settled in Tennessee. It is set out in *Hawkins v. State*, 4 Tenn.Crim.App. 121, 469 S.W.2d 515, 520 (1971):

". . . The rule, simply stated, is that there must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. *State v. Fowler*, 213 Tenn. 239, 373 S.W.2d 460; *Boulton v. State*, 214 Tenn. 94, 377 S.W.2d 936. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. *Sherrill v. State*, 204 Tenn. 427, 321 S.W.2d 811. It is not necessary that the corroboration extend to every part of the accomplice's evidence. The corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence be slight and entitled, when standing alone, to but little consideration. *Stanley v. State*, 189 Tenn. 110, 222 S.W.2d 384; *Binkley v. State*, 1 Tenn.Cr. App. 214, 434 S.W.2d 336.

'The entire conduct of the accused may be looked to for the corroborating circumstances; and if, from those circumstances, the crime may fairly be inferred, the corroboration is sufficient. See 23 C.J.S. Criminal Law § 812(4).' *Binkley v. State*, supra.

The quantum of evidence sufficient to corroborate the testimony of an accomplice is for the determination of the jury. From the facts proved in evidence the jury is entitled to draw reasonable inferences, and this Court may not substitute its judgment or inferences for those of the jury. *Stanley v. State*, supra; *Binkley v. State*, supra."

*See also, Monts v. State*, 214 Tenn. 171, 379 S.W.2d 34 (1964); *Henley v. State*, 489 S.W.2d 53 (Tenn.Cr.App.1972); *Hawkins v. State*, 4 Tenn.Cr.App. 121, 469 S.W.2d 515 (1971).

■ We find sufficient corroboration. Mrs. Wards testified that she gave the forged document to appellant and did not see it again. It was ultimately recorded in the Department of Public Health, Division of Vital Statistics. Appellant testified that he had not conversed with Mrs. Wards but she testified that he told her that he needed this certificate because he was indicted in Florida. When he testified, he admitted that he was under indictment in Florida. Further, the certificate itself accurately bore appellant's date and place of birth, social security number, names and addresses of his parents (including his mother's maiden name) and other biographical information. Mrs. Wards testified that appellant furnished her with this correct information.

All of this corroborates that a crime was committed and that the appellant was implicated in it. The quantum of the corroborating evidence is a question for the jury. This assignment is overruled.

■ Appellant next insists that the evidence preponderates against the verdict of guilty and in favor of his innocence. The guilty verdict approved by the Trial Judge removes appellant's presumption of innocence and clothes him in a presumption of guilt. The burden is upon him to show on appeal that the evidence preponderates against the verdict and in favor of his innocence. *Sikes v. State*, 524 S.W.2d 483 (Tenn.1975); *McBee v. State*, 213 Tenn. 15, 372 S.W.2d 173 (1963). We do not find that the evidence preponderates against the verdict of guilty and in favor of appellant's innocence. This assignment is overruled.

Appellant says that there was a material variance between the charge as stated in the indictment and the proof introduced at trial. The indictment charged that the appellant and Wanda Wards:

"willfully, maliciously and feloniously falsely create the impression that HAR-RY ALLEN ROCKWELL had become deceased, to-wit: did make a forged death certificate and did forge said death certificate to the prejudice of the rights of Charles DeWitt, M.D., C. L. Pearson, M.E., Martha Haun, John Fortner, and William O. Debusk and with the intent to defraud the State of Tennessee, Department of Vital Statistics, the said death certificate being in the words and figures as follows: (see second page), said making and forging and false impression being contrary to Section 39–1947, Tennessee Code Annotated, and against the peace and dignity of the State of Tennessee."

Appellant argues that the essence of the indictment was to charge him with forgery of a death certificate and that the State's evidence clearly established that the forgery was committed by Wanda Wards.

A fair reading of the indictment discloses that it charged appellant and Wanda Wards with falsely creating the impression that Harry Allen Rockwell had become deceased and that they forged a death certificate to accomplish this end. Appellant says that he was not a principal because he did not commit the forgeries. The State says he is an aider and abettor and punishable as a principal under T.C.A. § 39–109.

At common law, there were four different degrees of guilt. There were principals in the first degree; who were the actors and absolute perpetrators of the crime. There were principals in the second degree. They were the persons who were present, aiding and abetting in the perpetration of the crime. The principal in the second degree did not have to be within sight or hearing of the fact; but he could be constructively present, as where one commits a robbery and another watches or guards at a convenient distance. Finally, there were accessories before the fact and accessories after the fact. Accessories were not present either actually or constructively at the time the offense was committed but concerned themselves therein either before or after the offense was committed. *Pierce v. State*, 130 Tenn. 24, 168 S.W. 851 (1914).

■ The purpose and effect of T.C.A. § 39–109 was to abolish the distinction between principals in the first degree and principals in the second degree. Under this Code Section, both are treated identically. T.C.A. § 39–107 defines accessory before the fact to be any person who shall feloniously move, incite, counsel, hire, command or procure any other person to commit a felony. T.C.A. § 39–108 provides that accessories before the fact should be deemed principal offenders and punished as such. The common law distinction as to accessories after the fact remains.

■ Appellant was indicted under T.C.A. § 39–1916 for willfully and maliciously creating the impression that he was deceased. The State's proof, which was accredited by the jury verdict, was that appellant acted as principal actor in accomplishing the offense by causing the forged death certificate to be lodged with the Department of Health. The false information was then transmitted to the Florida Court. The offense was that of creating the false impression of appellant's death, and the forgery of the certificate was an instrument to reach this end. Appellant also aided and abetted Mrs. Wards in committing the actual forgery. He procured the blank certificate for her and furnished her with the necessary information to complete the false certificate. He procured her services to commit the forgery. Various acts of appellant, taken alone, would have fallen within the common law definitions of three degrees of guilt: principal in the first and second degree and accessory before the fact. By statute, there is now no distinction between these three common law degrees; all are now deemed principals of the same degree. There is no material variance between the indictment and the proof. Assignment III is overruled.

■ Appellant next charges that he was indicted for forgery (T.C.A. § 39–1704) and for a violation of T.C.A. § 39–1916 in the same count of the indictment.

The defendant first contends that the indictment was erroneous because it stated that "T.C.A. § 39–1947" had been violated.

This code section now deals with fraudulent use of credit cards. In October, 1975, Volume 7 of the Code was revised and T.C.A. § 39–1947 then became T.C.A. § 39–1916. When appellant was indicted, T.C.A. § 39–1947 charged the offense for which he was tried and convicted.

The indictment in this case was very inartfully drafted. It first charges the creating of the false impression of death in the language of T.C.A. § 39–1916. The indictment then charges forgery of the death certificate and that the defendants intended to defraud the State and to prejudice the rights of the various persons whose names were written on the certificate. The first portion of the indictment charges a violation of T.C.A. § 39–1916 using the language of the Statute. There follows a comma and the word "to-wit:" then the indictment continues to describe that the defendants forged the death certificate. The meaning of "to-wit" is: "that is to say; namely". 1658 BLACK'S LAW DICTIONARY (4th ed. 1968). By use of the word "to-wit:" we think that the defendants were reasonably placed on notice that they were charged with a violation of T.C.A. § 39–1916 and that the death certificate was forged to accomplish the violation.

T.C.A. § 40–1802 provides as follows: "40–1802. *Statement of offense.*—The indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment; and in no case are such words as 'force and arms' or 'contrary to the form of the statute' necessary."

We think that a person of common understanding would know that the grand jury intended to charge a violation of T.C.A. § 39–1916 only and that the use of the forged certificate was the means of committing this offense.

■ The language of part of the indictment—"to the prejudice of the rights of

Charles DeWitt, M.D., C. L. Pearson, M.E., Martha Haun, John Fortner, and William O. Debusk and with intent to defraud the State of Tennessee, Department of Vital Statistics"—is mere surplusage. *See also, Cole v. State,* 512 S.W.2d 598 (Tenn.Cr.App. 1974); *McCracken v. State,* 489 S.W.2d 48 (Tenn.Cr.App.1972); *Moore v. State,* 1 Tenn.Crim.App. 190, 432 S.W.2d 684 (1968). This assignment is overruled.

■ Appellant next urges that T.C.A. § 39–1916 is so ambiguous and meaningless that it violates due process as guaranteed under Article I, Section 8 of the Tennessee Constitution and the 14th Amendment of the United States Constitution. In support of this proposition, appellant cites *State v. Netto,* 486 S.W.2d 725 (Tenn.1972). In that case, the Supreme Court, speaking through Justice McCanless, said:

"Both principles of law and considerations of policy govern the determination whether a statute fulfills its requirements under the due process clause of the Fourteenth Amendment. Courts are often prone, however, to adopt concise phrases from well written opinions which summarily embrace a given standard. It is said that a statute which either forbids or requires the doing of an act in term so vague 'that men of common intelligence must necessarily guess at its meaning' and differ as to its application violates the first essential of due process of law. *Connally v. General Construction Company,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 326 [1926]. The line of demarcation between what is lawful and what is unlawful cannot be left to conjecture. The statute must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. *Roberts v. Clement,* 252 F.Supp. 835 [D.C.Tenn. 1966]. No one should be required at peril of life, liberty, or property to speculate as to the meaning of penal statutes. *Lanzetta v. New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 [1939]. On the other hand, legislatures when adopting such statutes as the one in question are reluctant to define such conduct in specific terms; for to do so would encourage the circumvention of such laws through the varied schemes that ingenious persons may discover." 486 S.W.2d 725, at 728.

\*　　\*　　\*　　\*　　\*　　\*

"The statute should be given a construction that will not render its terms useless. *Tasco Developing & Bldg. Corp. v. Long,* 212 Tenn. 96, 368 S.W.2d 65 [1963]. We are of opinion that the words of Section 30–2017, T.C.A., fulfill the requirements of reasonable certainty under the due process clause of the Fourteenth Amendment. The statute does so through the '. . . use of ordinary terms to express ideas which find adequate usage and understanding. The use of common experience as a glossary is necessary to meet the practical demands of legislation.' *Sproles v. Binford,* 286 U.S. 374, 52 S.Ct. 581, 76 L.Ed. 1167 [1932]. A lack of precision is not itself offensive to the requirements of due process. *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 [1957].

The Constitution does not require impossible standards; all that is required is that the language convey a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. The Constitution requires no more. *United States v. Petrillo,* 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877 [1947].

'The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.' *Colten v. Ky.,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 [1972].

We agree with the holding of the Kentucky Court. Citizens who desire to obey the statute will have no difficulty in understanding it. *Colten v. Common-*

256

*wealth* (Ky.1971) 467 S.W.2d 374." 486 S.W.2d 725, at 729–730.

T.C.A. § 39–1916 declares it to be a felony for any person "*willfully and maliciously* to falsely create the impression that said person has become deceased for any purpose". (Emphasis supplied). We do not think that this Statute is unconstitutionally vague and overbroad. The language employed is couched in ordinary terms and it conveys a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. We hold that the Statute is valid.

The judgment of the Criminal Court of Washington County is affirmed.

WALKER, P. J., and DUNCAN, J., concur.