Melvin A. LEVY and M. L. Fortner, Plaintiffs-Appellants,

v.

STATE of Tennessee BOARD OF EXAMINERS FOR SPEECH PATHOLOGY AND AUDIOLOGY et al., Defendants-Appellees.

Court of Appeals of Tennessee, Middle Section.

Dec. 1, 1978.

Certiorari Denied by Supreme Court March 5, 1979.

Calvin N. Taylor, Cheek, Taylor & Groover, Knoxville, for plaintiffs-appellants.

William M. Leech, Jr., Atty. Gen., Frank J. Scanlon, William B. Hubbard, Asst. Attys. Gen., Nashville, for defendants-appellees.

OPINION

LEWIS, Judge.

Plaintiffs have appealed from the decision of the Chancellor in affirming the Board of Examiners for Speech Pathology and Audiology (hereafter Board) in the denial of their licensure as audiologists pursuant to T.C.A. § 63-1713, the "grandfather clause" of the Licensure Act for Speech Pathologists and Audiologists of 1973.

This is the second appeal. Plaintiffs had previously applied to the Board for a license to practice audiology. The Board held a hearing and, thereafter, denied their application.

Plaintiffs filed a petition for review in the Davidson County Chancery Court. The Chancellor affirmed the Board's decision.

Plaintiffs subsequently appealed to the Tennessee Supreme Court, resulting in a remand to the Chancery Court to remand to the Board for written findings of fact and conclusions of law. *Levy v. State Board of Examiners for Speech Pathology and Audiology,* 553 S.W.2d 909 (Tenn.1977).

On remand, the Board reviewed the record, reaffirmed its denial, and made the following findings of fact and conclusions of law, which we paraphrase:

1. The prospective licensee bears the burden of establishing compliance with T.C.A. § 63–1713.

2. The practice of audiology involves a wide variety of testing techniques and necessarily requires the capability to conduct certain tests.

3. Once the disability is ascertained, an audiologist has the capability of utilizing rehabilitative and habilitative techniques.

4. For a person to actively engage in the practice of audiology it is necessary that he or she be capable of rendering the services outlined above.

5. Prior to their application for licensure, plaintiffs were licensed hearing aid dispensers and fitters.

6. Plaintiffs have failed to demonstrate a capability of rendering the full range of testing and remedial services an audiologist would necessarily be able to perform.

7. From the personal experience of Board members, it is their opinion that plaintiffs' professional and work experience does not constitute what is traditionally and professionally understood to be the practice of audiology.

8. The applicants have not engaged in the practice of audiology as that practice is defined by law and understood by the Board for any period of time prior to their application for licensure.

Plaintiffs' appeal to this Court is predicated on three (3) assignments of error:

## I.

TENNESSEE BOARD OF EXAMINERS FOR SPEECH PATHOLOGY AND AUDIOLOGY WAS ARBITRARY AND CAPRICIOUS AND ABUSED ITS DISCRETION IN DENYING PLAINTIFFS' LICENSURE AS AUDIOLOGISTS PURSUANT TO THE LICENSURE ACT FOR SPEECH PATHOLOGISTS AND AUDIOLOGISTS OF 1973, *TENNESSEE CODE ANNOTATED* SECT. 63–1702 et seq. AND THE CHANCELLOR ERRED IN FAILING TO REVERSE THE BOARD'S DECISION.

## II.

THE DECISION OF THE TENNESSEE BOARD OF EXAMINERS FOR SPEECH PATHOLOGY AND AUDIOLOGY IS UNSUPPORTED BY EVIDENCE WHICH IS BOTH SUBSTANTIAL AND MATERIAL IN LIGHT OF THE ENTIRE RECORD IN THIS CASE AND THE CHANCELLOR ERRED IN NOT REVERSING THE DECISION OF THE BOARD.

## III.

THE TENNESSEE BOARD OF EXAMINERS FOR SPEECH PATHOLOGY AND AUDIOLOGY ACTED IN VIOLATION OF APPELLANTS' CONSTITUTIONAL RIGHTS AND ON UNLAWFUL PROCEDURE AND IN EXCESS OF ITS STATUTORY AUTHORITY BY CONSIDERING FACTS NOT IN THE RECORD AND BY REDEFINING THE "PRACTICE OF AUDIOLOGY" CONTRARY TO THE DEFINITION PROVIDED IN THE TENNESSEE CODE ANNOTATED, SEC. 63–1703(g) AND THE CHANCELLOR ERRED IN NOT REVERSING THE DECISION OF THE BOARD.

We will discuss the assignments together.

The intent of the Legislature in enacting T.C.A. § 63–1701 et seq. is stated in T.C.A. § 1702:

It is the purpose and intent of the general assembly by this enactment to safeguard the public health, safety, welfare, and to protect the public from being misled by incompetent, unscrupulous, and unauthorized persons, and to protect the public from unprofessional conduct by qualified speech pathologists and audiologists, by providing the regulatory authority over persons offering speech pathology and audiology services to the public.

T.C.A. § 63–1703(f) defines "audiologist" as:

"One who practices audiology; . . ."

Subsection (g) establishes:

"The practice of audiology" means the application of nonmedical principles, methods, and procedures of measurement, testing, appraisal, prediction, consultation, counseling, and instruction relat[ing] to hearing and disorders of hearing for the purpose of modifying communicative disorders involving speech, language, auditory function, or other aberrant behavior related to hearing loss.

T.C.A. § 63–1705(1) authorized the board:

To administer, coordinate, and enforce the provisions of this chapter, evaluate the qualifications of applicants, supervise the examination for applicants, . . .

That it is properly within the legislative prerogative to delegate discretionary powers to administrative bodies is well established in the law. See generally Tasco Developing and Building Corporation v. Long, 212 Tenn. 96, 368 S.W.2d 65 (1963). However, such discretionary powers cannot be unfettered. See generally Gatlinburg Beer Regulations Committee v. Ogle, 185 Tenn. 482, 206 S.W.2d 891 (1948).

In order to effectuate an orderly licensing and testing procedure, T.C.A. § 63–1710 further empowers the Board to act, in relation to establishing licensing requirements by requiring that the applicants must:

Pass an examination covering the areas of speech pathology, audiology, and speech and hearing services approved by the board. . . . Written examinations may be supplemented by such oral examinations as the board shall determine.

The content, subject matter, of the test is left to the discretion of the Board. This evidences the Legislature's intent to grant the Board a broad power to establish the qualifications necessary to practice the professions in question. And in accordance with the general rule, this grant of discretion is not unfettered. The delegation of authority pursuant to T.C.A. §§ 63–1705 and 1710 to establish minimum requirements to be licensed in the field requires the Board to make a determination within the confines of T.C.A. § 63–1702—to safeguard the public health, safety, welfare, etc.—and with the ambit of the broad definitional requirements of T.C.A. § 63–1703.

To insure that the Board has the requisite knowledge and capacity to make such determination, the Legislature established specific requirements for membership on the Board. See T.C.A. § 63–1704. In essence, this section requires the Board to be composed of six (6) members. Five (5) are to be specialists in speech pathology or audiology, and the sixth physician specializing in otolaryngology, an ear, nose and throat specialist. The section further requires that the five (5) non-physician members be qualified for license in accordance with T.C.A. § 63–1710.

Plaintiffs applied for a licensure under T.C.A. § 63–1713, which is the "grandfather clause" for those who had been actively engaged in the practice of speech pathology or audiology for a period of six months in the two years preceding the enactment.

Thus, at the hearing it was the Board's duty to determine if the plaintiffs were engaged in the practice of audiology for the requisite time period.

Plaintiffs established that they were licensed pursuant to T.C.A. § 63–1501 et seq. as hearing aid dispensers and fitters. In fact, that had been their sole occupation for

the past number of years. It was on the basis of this experience that they sought licensure as audiologists.

Pursuant to the hearing, the Board determined that to be licensed as an audiologist or to have been so engaged for the statutory time requisite, one should be capable of applying:

A wide variety of testing techniques utilizing, in some instances, sophisticated equipment to determine the "site of lesion" or cause of hearing disfunction. Working in this capacity as audiologists would have the capability of utilizing, where appropriate, such tests as the pure-tone audiometry test, the impedience audiometry test, the Bekesy audiometry test, the loudness balance test, and the tone decay test.

Further:

Once the site of lesion or cause of a hearing disfunction is determined, the audiologists, again in conjunction with a doctor of medicine, has the capability of utilizing a number of rehabilitative or habilitative techniques aimed at the hearing disfunction. Such techniques include drill work to develop lip-reading abilities or sound differentation, counseling on the social and psychological aspects of a hearing disfunction, use of amplification devices, including hearing aids and auditory training.

The Board also determined:

For an individual to actively engage in the practice of audiology, it is necessary that he or she have a familiarity with and a capability of rendering the basic types of services set forth [above].

Though an audiologist may appear to specialize in one particular area of audiological testing or therapeutic work, his or her understanding and capabilities regarding the broad spectrum of an audiologists practice are a necessary element of the specialty practice.

The Board then concluded:

Nothing presented in the hearing indicated to the Board that the activities of Mr. Levy and Mr. Fortner were anything beyond the activities of a hearing aid dispenser.

We can find no arbitrary or capricious action on the part of the Board. It has acted within the legislative mandate of effectuating the orderly application of this act in protecting the public welfare by carefully defining the requisites of practicing audiology. It has acted within the narrow scope of the purposes of the act as enumerated in T.C.A. § 63–1702. Further, a contrary finding on the part of the Board would have been to "grandfather" in all licensed hearing aid dispensers actively engaged in the practice of dispensing hearing aids for the statutory period. The net effect would have been an implied revocation of T.C.A. § 63–1501 et seq., which we failed to discern from the language of T.C.A. § 63–1701 et seq. or its legislative history.

It is plaintiffs' contention that the Board acted in excess of its statutory authority by considering facts not in the record and by redefining the "practice of audiology" contrary to the definition of T.C.A. § 63–1703(g). We note that the "personal opinion" of the Board members based on their experience is merely expressive of their expertise used in aiding them to define "engaged in the practice" of audiology.

Having determined that the Board acted within the scope of its statutory authority, it remains that we determine whether the Board's holding as to these plaintiffs is supported by substantial and material evidence.

The scope of judicial review of administrative agency action is codified at T.C.A. § 4–523:

(h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

.     .     .     .     .

(5) unsupported by evidence which is both substantial and material in light of the entire record.

In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on question of fact.

█ The record reveals that the experience on which plaintiffs rely was exclusively as it regarded the dispensing and fitting of hearing aids, their licensed profession. The evidence also revealed that the plaintiffs were not experienced in conducting many of the tests the Board deemed basic in the field of audiology. Further, the evidence shows that the plaintiffs' experience in counseling, appraisals and predications is narrowly confined to the profession of hearing aid dispensing.

We, therefore, conclude that the record contains substantial evidence to warrant the findings of fact and conclusions of law by the Board.

Therefore, it is evident that the Chancellor did not err in refusing to reverse the decision of the Board.

It should be noted that nothing herein is to be construed as forfeiting plaintiffs' rights to gain licensure as audiologists by taking the examination as prescribed in T.C.A. § 63–1701 et seq.

The judgment of the Chancellor is affirmed with costs to plaintiffs.

SHRIVER, P. J., and TODD, J., concur.