# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### January 15, 2014 Session

## STATE OF TENNESSEE v. RANDALL GRAINGER

**Appeal from the Criminal Court for Davidson County**
**No. 12A592    Cheryl A. Blackburn, Judge**

---

**No. M2012-02545-CCA-R3-CD - Filed June 18, 2014**

---

Following a bench trial Defendant, Randall Grainger, was convicted of three counts of knowingly violating a condition of community supervision for life, with each condition violated not in itself constituting a criminal offense, in violation of Tennessee Code Annotated section 39-13-526 (a),(b)(1).  Each conviction is a Class A misdemeanor.  The trial court imposed a sentence of eleven (11) months and twenty-nine (29) days for each conviction and ordered the sentences to be served concurrently with each other.  The trial court suspended all of the effective sentence of eleven (11) months and twenty-nine (29) days except for ten (10) days' incarceration, followed by eleven (11) months and nineteen (19) days of probation.  In his appeal Defendant presents two issues for this Court's review.  First, Defendant asserts that the convictions should be reversed and the charges dismissed because Tennessee Code Annotated section 39-13-524(d)(1) violates Article II, section 3 of the Tennessee Constitution.  Second, Defendant argues that the conviction based upon his failure to successfully complete sex offender treatment violates his right to due process guaranteed by both the United States Constitution and the Tennessee Constitution.  After a thorough review of the record, the parties' briefs, and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ROBERT W. WEDEMEYER, J., joined.

Brent Horst, Nashville, Tennessee, for the appellant, Randall Grainger.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Megan King, Assistant District Attorney General, for the appellee, the State of Tennessee.

# OPINION

## Background

Following a jury trial in the Williamson County Circuit Court, Defendant was found guilty of aggravated sexual battery. The victim was his niece who was seven years old at the time of the offense. The following facts were set forth in this Court's opinion in Defendant's appeal from that conviction.

Though evidence of more than one incident between Defendant and his niece was introduced at trial, at the conclusion of the proof, the state elected to have the jury consider only the following incident. This incident occurred when B.B., the victim, was seven years old. (We will refer to the minor victim by her initials.) She was living with her grandmother in Nashville and was visiting her aunt and uncle, the Defendant, in Franklin. B.B. testified that on returning from a trip to the hardware store with the Defendant, he pulled his van over and stopped in a field. He told her to pull her shorts down and she said "no." He told her again to pull her shorts down and told her not to tell anybody. She further testified that Defendant "touched it," explaining that he put one hand between her legs and touched her "privates." The victim testified that while Defendant was touching her, he said that he liked to touch his wife's privates.

Kevin League, a Detective Sergeant with the Franklin Police Department, testified that he took two statements from the Defendant. League testified that on the first occasion, the Defendant speculated that the meeting concerned his niece, before the detective made any mention of the victim's name. In a written statement, Defendant described the incident that occurred on the way home from the hardware store. He claimed that his niece pulled her shorts down and told him that she had hair on her privates like her aunt Mellie, the Defendant's wife. He claimed that he told her to pull her shorts back up and did not touch her. Also according to Defendant's written statement, his niece asked him if he had ever "sucked on body parts like a bottle."

Defendant's testimony at trial mirrored his written statement to police. He admitted that the incident had occurred, but not as the victim described. He claimed that his niece had initiated the incident, testifying that the seven year old had been sexually aggressive toward him. Following an incident that occurred in Defendant's home, he told his wife that he

-2-

thought their niece had been molested in the past and to watch her. His wife, the victim's aunt, testified at trial that Defendant never told her that B.B. had "come onto" him, as Defendant claimed.

*State v. Randall Veris Grainger*, No. M2001-02178-CCA-R3-CD, 2002 WL 31385936 at *1 (Tenn. Crim. App. Oct. 22, 2002) *perm app. denied* (Tenn. Mar. 3, 2003).

This court affirmed the conviction and the ten-year sentence imposed by the trial court. *Id*. 2002 WL 31385936 at *8. Because Defendant was convicted of aggravated sexual battery in violation of Tennessee Code Annotated section 39-13-504, he was also sentenced to community supervision for life (CSL) pursuant to Tennessee Code Annotated section 39-13-524. The substance of that statute has not been amended since Defendant's offense and the statute currently states:

**39-13-524. Sentence of community supervision for life.**

(a)     In addition to the punishment authorized by the specific statute prohibiting the conduct, a person shall receive a sentence of community supervision for life who, on or after:

   (1)     July 1, 1996, commits a violation of § 39-13-502, § 39-13-503, § 39-13-504, or § 39-13-522;

   (2)     July 1, 2010, commits a violation of § 39-13-531; or

   (3)     The applicable date as provided in subdivision (a)(1) or (a)(2) attempts to commit a violation of any of the sections enumerated in subdivision (a)(1) or (a)(2).

(b)     The judgment of conviction for all persons to whom the provisions of subsection (a) apply shall include that the person is sentenced to community supervision for life.

(c)     The sentence of community supervision for life shall commence immediately upon the expiration of the term of imprisonment imposed upon the person by the court or upon the person's release from regular parole supervision, whichever first occurs.

(d)     (1)     *A person on community supervision shall be under the jurisdiction, supervision and control of the department*

*of correction in the same manner as a person under parole supervision. The department is authorized on an individual basis to establish such conditions of community supervision as are necessary to protect the public from the person's committing a new sex offense, as well as promoting the rehabilitation of the person.*

(2) The department is authorized to impose and enforce a supervision and rehabilitation fee upon a person on community supervision similar to the fee imposed by § 40-28-201. To the extent possible, the department shall set the fee in an amount that will substantially defray the cost of the community supervision program. The department shall also establish a fee waiver procedure for hardship cases and indigency.

(emphasis added)

The statute that Defendant was convicted of violating states in pertinent part as follows:

**39-13-526. Violations of community supervision – Venue for violations. –**

(a) It is an offense for a person to knowingly violate a condition of community supervision imposed upon the person pursuant to § 39-13-524.

(b) (1) If the conduct that is a violation of a condition of community supervision does not constitute a criminal offense, the violation is a Class A misdemeanor.

Tenn. Code Ann. § 39-13-526(a), (b)(1)

Defendant was convicted of violating community supervision in one count by possessing alcohol, in another count for failure to successfully complete sex offender treatment, and in the third count for viewing pornography. After Defendant had completely served his ten-year sentence of imprisonment, he was placed on CSL as per the judgment of conviction. Various conditions of CSL were set forth in a document, signed by Defendant,

-4-

which is titled "Specialized Parole Conditions for Sex Offenders." Relevant to this appeal are the three following special conditions applicable to Defendant:

> 1.     I will not purchase or possess any pornographic or sexually explicit written, printed, photographed or recorded materials, software, cable station nor frequent or be employed by or engage in activities in any business where pornographic materials are openly exhibited, including, but not limited to, adult bookstores, theaters, nude or strip bars, clubs or areas of prostitution activity.
>
> . . .
>
> 3.     I will attend, participate in, and pay for treatment or counseling with an approved treatment provider as deemed necessary by the Board, the Court, or my Officer. I will continue in such treatment as instructed for the duration of supervision unless my treatment provider, in consultation with my Officer, instructs me in writing that I have satisfactorily completed treatment.
>
> . . .
>
> 4.     I will not use or possess any alcoholic beverage or other mind-altering substance, except pursuant to my own prescription from a licensed physician. I will inform my Officer the next business day of any prescription I receive and will submit to testing for the presence of any controlled substance or alcohol.

## ANALYSIS

*Constitutionality of Tennessee Code Annotated section 39-13-524(d)(1)*

Defendant argues that Tennessee Code Annotated section 39-13-524(d)(1) violates Article II section 3 of the Tennessee Constitution, specifically the first sentence of that section which states, "The Legislative authority of this State shall be vested in a General Assembly, which shall consist of a Senate and House of Representatives, both dependent on the people." Tennessee Code Annotated section 39-13-524(d)(1) states as follows:

> (d)(1)  A person on community supervision shall be under the jurisdiction, supervision and control of the department of correction in the same manner as a person under parole supervision. The department is authorized on an individual basis to establish such conditions of community supervision as are necessary to protect the public from the person's committing a new sex offense, as well as promoting the rehabilitation of the person.

Defendant asserts that the General Assembly unconstitutionally delegated its lawmaking authority to the Department of Correction (which by legislation took the place of the Board of Probation and Parole after Defendant was placed on CSL) by enacting Tennessee Code Annotated section 39-13-524(d)(1). Specifically, Defendant argues that Tennessee Code Annotated section 39-13-524(d)(1) unlawfully authorized an executive branch entity to define a criminal act and the scope of its applicability. In other words, according to Defendant, by granting an executive branch entity the power to define and create certain conditions of CSL, and by stating that a knowing violation of any such condition is a crime as set forth in Tennessee Code Annotated section 39-13-526, the General Assembly authorized the executive branch to act in a legislative capacity to define and proscribe criminal acts.

In support of his argument, Defendant directs our attention to the wording of Tennessee Code Annotated section 39-13-526(b)(1), which states, "(b)(1) If the conduct that is a violation of a condition of community supervision does not constitute a criminal offense, the violation is a Class A misdemeanor." Defendant implicitly asserts that a plain reading of this section of the statute clearly shows that under the challenged statute (Tenn. Code Ann. § 39-13-524(d)(1)), the Board of Probation and Parole (now the Department of Correction) is authorized to criminalize an act or omission that the General Assembly has not criminalized, simply by including the act or omission as a condition of CSL. Defendant acknowledges that there are some restrictions on the executive branch when determining the individualized conditions. That is, the specialized conditions must be "necessary to protect the public from the [defendant's] committing a new sex offense, as well as promoting the rehabilitation of the person." Tenn. Code Ann. § 39-13-524(d)(1). However, Defendant argues that this "policy statement" is "too broad" to provide any restriction on what can be a condition of CSL, which becomes the basis of a criminal charge upon being included as a condition of CSL, even if the act is otherwise not a crime.

The State initially argues that Defendant has waived his claim that Tennessee Code Annotated section 39-13-524(d)(1) is unconstitutional because he did not assert this claim when he appealed his conviction for aggravated sexual battery. We do not agree and will address the merits of the issue.

Defendant relies upon *Tasco v. Long*, 368 S.W.2d 65 (Tenn. 1963) for the well settled proposition that the General Assembly cannot delegate its law making authority. Defendant concedes, however, that even in criminal cases, the General Assembly may delegate to agencies or departments of the executive branch rule making authority pertaining to "implementation of criminal laws and criminal sanctions created by the General Assembly." Defendant argues that the language in Tennessee Code Annotated section 39-13-524(d)(1)

fails to establish meaningful standards for the executive branch to follow and in fact provides complete discretion in legislative activity to the executive branch. Our supreme court has set forth the law regarding this issue as follows:

> Article II, section 3 of the Tennessee Constitution vests the state's legislative power in the General Assembly. In general, "legislative power" is "the authority to make, order, and repeal law." *Id*. The General Assembly may not delegate power that is "purely legislative." *State v. Edwards*, 572 S.W.2d 917, 919 (Tenn. 1978); see also *Chattanooga-Hamilton County Hosp. Auth. v. Chattanooga*, 580 S.W.2d 322, 328 (Tenn. 1979). Therefore, the General Assembly may not delegate to an executive branch agency the exercise of the legislature's discretion as to what the law shall be. *See Dep't of Pub. Welfare v. Nat'l Help "U" Ass'n*, 197 Tenn. 8, 270 S.W.2d 337, 339 (1954). However, the General Assembly may delegate to an administrative agency the authority to implement the expressed policy of particular statutes. *See Edwards*, 572 S.W.2d at 919. A grant of such authority may include the power to promulgate rules and regulations that have the effect of law in the agency's area of operation. *See Bean v. McWherter*, 953 S.W.2d 197, 199 (Tenn. 1997). Because the enactment of reasonable rules and regulations is administrative in character, it does not amount to the exercise of a legislative function, despite the agency's exercise of discretion. *See Tasco Developing & Bldg. Corp. v. Long*, 212 Tenn. 96, 368 S.W.2d 65, 68-69 (1963); *see also INS v. Chadha*, 462 U.S. 919, 953 n. 16, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) (noting that rulemaking by administrative agencies resembles lawmaking).
>
> The test for determining whether a legislature's delegation of power to an administrative agency is unconstitutional is "whether the statute contains sufficient standards or guidelines to enable both the agency and the courts to determine if the agency is carrying out the legislature's intent." *Bean*, 953 S.W.2d at 199.

*Gallaher v. Elam*, 104 S.W.3d 455, 464 (Tenn. 2003).

In *Bean v. McWherter*, 953 S.W.2d 197 (Tenn. 1997), our supreme court also held that,

> Detailed or specific legislation may be neither required nor feasible when the subject matter requires an agency's expertise and flexibility to deal with complex and changing conditions.

The requirement of expressed standards may also be relaxed when the discretion to be exercised relates to or regulates for the protection of the public's health, safety, and welfare.

*Bean*, 953 S.W.2d at 199.

By legislative enactment, any individualized conditions of CSL must be necessary to protect the public from the defendant committing an additional sex offense and promote the rehabilitation of the defendant. Obviously, these relate to the public's safety and welfare. The standards in the statute enable both the executive branch and the judicial branch to determine if the executive branch is carrying out the intent of the General Assembly. We hold that under *Bean* and *Gallaher*, Tennessee Code Annotated section 39-13-524(d)(1) does not violate Article II, section 3 of the Tennessee Constitution. Defendant is not entitled to relief on this issue.

*Due Process Claim*

Defendant argues that his conviction for violating a condition of CSL by "failure to successfully complete sex offender treatment" violates his rights to due process guaranteed by the United States and the Tennessee constitutions because the conviction punished him "for refusing to confess a crime."

Before addressing the merits of this issue, it is necessary to summarize the relevant evidence from the trial. As noted above, one of the conditions of Defendant's community supervision was that,

> 3. I will attend, participate in, and pay for treatment or counseling with an approved treatment provider as deemed necessary by the Board, the Court, or my Officer. I will continue in such treatment as instructed for the duration of supervision unless my treatment provider, in consultation with my Officer, instructs me in writing that I have satisfactorily completed treatment.
>
> . . .

In order to begin participation with an approved treatment provider Defendant contacted Dr. Donna Moore, Ph.D., a psychologist. Dr. Moore testified at trial as an expert witness in the field of sex offender treatment and evaluation. Dr. Moore first met Defendant when he came to her office for a psychosexual examination in December 2009. Defendant was first interviewed that day and then tested on a subsequent visit in January 2010. Dr. Moore testified that Defendant was "in denial" as to his committing improper sexual

behavior which resulted in his conviction for aggravated sexual battery. As part of the treatment program, Defendant was required to take a polygraph examination because he remained "in denial" and also because he did not actively participate in nine consecutive weekly group therapy sessions. After taking the polygraph examination and being confronted with the results, Defendant "reluctantly" admitted some details of the incident which led to his conviction. Defendant told the group therapy participants that "he knew how wrong" his conduct had been.

Dr. Moore permitted Defendant to remain in her sex offender treatment program even though he had been in denial from the beginning and had declined to participate in group discussions because at this tenth session Defendant "was able to acknowledge some of the behaviors, enough to be able to stay in treatment." However, the following week at the eleventh weekly group therapy session, Defendant disavowed the admissions he had made the previous week. Dr. Moore testified that,

> [Defendant] returned the following week and that week said that he had not done the behaviors and that he only said the week before that he did [exhibit the behaviors] was because I [Dr. Moore] had called him a liar and that we had basically coerced him to admit those things.

Defendant came to one more group therapy session with Dr. Moore. Defendant continued to deny that he was "sexually deviant" and that he had engaged in the offense of aggravated sexual battery for the purpose of sexual gratification. Defendant was discharged from Dr. Moore's sex offender treatment program "because of his refusal to acknowledge the behavior problem for which is the group's purpose." Thus, Defendant failed to successfully complete sex offender treatment. In a "treatment summary" which Dr. Moore prepared and sent to Defendant's CSL officer, Dr. Moore provided details of why Defendant had to be expelled from the sex offender treatment and why honesty by Defendant was necessary for him to participate in treatment. The treatment summary was made an exhibit and states in part as follows:

> In summary, [Defendant] was compliant with attendance yet not prepared to work in therapy as outlined in his treatment contract (enclosed). He was unwilling to accept responsibility for his offense of record, sexual interest in children, or ongoing sexual risks. He was unwilling to comply with the therapeutic rules to assist him in lowering his risk for sexual reoffense. Sexual offenders such as [Defendant], have created an offending environment to act out and commit their sexual offenses, and try to do this with others as well. That is, his attempt to create an offending environment in treatment by using tactics of manipulation and deceit were unsuccessful

for him to which he responded by playing the victim and blaming others for his problems rather than learn ways to deal with them himself. He may seek an alternative therapy program where he can manipulate and be successful rather than address his issues. It is critical that he be able to make healthy choices and learn to modify his behavior rather than seek settings in which he can manipulate others. [Defendant] remains at risk for sexual reoffense against children. His history of manipulative behaviors as demonstrated in his offending and indicates entrenched patterns of behavior that need to be addressed.

Thank you for your referral for this case. If I can provide additional information, I would be happy to do so and you may contact me at ***-***-****. I look forward to working with you in the future.

/s/ Donna L. Moore

Donna L. Moore, Ph.D.
Psychologist, H.S.P.

Defendant testified that he had maintained at his trial for aggravated sexual battery, and continued to maintain at the time of his trial for violation of conditions of CSL, that he was innocent of the charges of aggravated sexual battery. Defendant admitted that Dr. Moore's testimony about Defendant's reluctance to admit his guilt to the sexual offense was mostly accurate. Defendant testified that the only reason he got "kicked out" of the sex offender treatment program was because he would not admit to committing the offense for which he had been convicted. Defendant acknowledged that his community supervision officer advised him to get back into "counseling" "once this [pending charge] is over." Defendant added that he had no reluctance to go to the counseling "as long as they don't try to force me into telling something that ain's [sic] truth [sic]."

On cross-examination, Defendant admitted that he had been "expelled" from Dr. Moore's sex offender treatment program because he refused to "admit to having any sexual intent or gratification concerning the offense for which [he had been] convicted." Defendant acknowledged that he had not attended any sex offender treatment program since being expelled by Dr. Moore.

From our review of the record, we conclude that the only criminal conduct Defendant had to admit to in order to comply with the sex offender treatment was the criminal conduct pertaining to his conviction offense. Constitutional protections from double jeopardy would

prohibit any further prosecution for the offenses of aggravated sexual battery for which he had been convicted.  *See* U.S. Const. Amend. 5.

Defendant concedes that his fifth amendment rights to remain silent and to have an attorney [present during questioning] are not implicated.  However, his entire citation to legal authority is a citation to six state and federal cases, with no analysis of the cases in support of the assertion that, "[M]any [s]tate and [f]ederal [c]ourts have held that it is a due process violation to coerce a confession."  In its brief, the State satisfactorily distinguishes each case submitted by Defendant.

According to the evidence, an offender's acknowledgment of inappropriate behavior in commission of the conviction offense is a necessary part of sex offender treatment for the rehabilitation of the offender and for protection of the public from the offender's commission of more sexual offenses.  Unless Defendant acknowledged his wrongful conduct, he could not participate in sex offender therapy.  He was expelled from treatment.  Therefore he failed to meet one of the conditions of community supervision.  As a result he was formally charged, tried, and convicted for the offense of violation of a condition of community supervision, to-wit: failure to complete sex offender treatment.  Admission by Defendant of the acts resulting in his conviction for aggravated sexual battery could never be used against Defendant in any future prosecution.  Therefore, any admissions he might have made concerning the conviction offense could not be incriminating statements.  The special condition of CSL pertaining to this issue required Defendant to continue in sex offender treatment for the duration of CSL unless he was instructed in writing that he had satisfactorily completed the program.  The status of this condition of Defendant's CSL is that he was expelled by the State approved and State designated sex offender treatment provider from participating in treatment and counseling because he refused to admit his criminal conduct.  The proof indicates he will never be permitted to again participate in sex offender treatment as long as he refuses to acknowledge his sexual conduct with the victim.  Defendant maintained that he would never admit to any wrongful conduct.  Therefore, the proof shows he will never again be admitted to a sex offender treatment program, even if he requests to resume treatment without a requirement to admit his criminal conduct.

Defendant's due process claim appears to be a claim of violation of his right to substantive due process.  Substantive due process claims are usually allocated to one of two categories.  As noted by our supreme court in *Mansell v. Bridgestone Firestone North American Tire*, *LLC*, *et al.*, 417 S.W.3d 393 (Tenn. 2013):

> In contrast to procedural due process, substantive due process bars oppressive government action regardless of the fairness of the procedures used to implement the action.  *Lynch* [*v. City of Jellico*, 205 S.W.3d 384, 391-92

(Tenn. 2006)]. Substantive due process claims are divided into two categories: (1) deprivations of a fundamental constitutional guarantee, and (2) government actions that are "arbitrary, or conscience shocking, in a constitutional sense." *Id.* at 392 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 128, 112 S.Ct. 1061, 117 L.Ed. 261 (1992)). "Appropriate limits on substantive due process come not from drawing arbitrary lines but rather from careful 'respect for the teachings of history [and] solid recognition of the basic values that underlie our society.'" *Moore v. City of E. Cleveland, Ohio*, 431 U.S. 494, 503, 97 S.Ct. 1932, 52 L.Ed. 531 (1977)(quoting *Griswold v. Connecticut*, 381 U.S. 479, 501, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965)(Harlan, J., concurring)).

*Mansell*, 417 S.W.3d at 409.

Defendant argues that the State used coercion in the form of criminal charges for violating a condition of CSL in order to obtain a confession from Defendant. In other words Defendant argues the State in effect told him, "Either confess to the crime for which you have been convicted, or you will be charged with an additional criminal offense."

We respectfully disagree with Defendant's argument. Our holding in this case is limited to the facts of this case. In order to successfully provide sex offender treatment for Defendant, the State, through its approved and designated treatment provider, mandated that Defendant must acknowledge the wrongfulness of his criminal acts which led to his conviction for aggravated sexual battery. The conviction had been a final judgment for several years prior to Defendant's attempt to participate in sex offender treatment. The admissions that Defendant refused to make could never be used against him in any criminal proceedings and is therefore not a deprivation of a fundamental constitutional right. Based on the proof, as long as Defendant refuses to admit his wrongful conduct, the State will never permit him to attempt to comply with the condition of CSL that he participate in sex offender treatment. This one time prosecution for violating a condition of CSL by failure to successfully complete his sex offender treatment for the reason that he would not admit to his criminal conduct is not arbitrary, irrational, improperly motivated, or so egregious to shock the conscience. Defendant is not entitled to relief on this issue.

In conclusion, we affirm the judgments of the trial court.

_____
THOMAS T. WOODALL, JUDGE