McQueen *et al. v.* McCanless, Com'r of Finance and Taxation.

(*Nashville,* December Term, 1944.)

Opinion filed May 5, 1945.

WILLIAM J. CARTER and SAM W. PRICE, both of Johnson City, and HARRY GOODMAN, of Mountain City, for defendant in error (petitioner below).

ROY H. BEELER, Attorney-General, W. F. BARRY, Solicitor General, and C. W. TULEY, Assistant Attorney-General, for plaintiff in error (respondent below).

MR. JUSTICE NEIL delivered the opinion of the Court.

The questions raised on this appeal from the Circuit Court of Davidson County involve the right of the Commissioner of Finance and Taxation to confiscate a truck, alleged to be the property of A. S. McQueen, a certain quantity of whiskey claimed by Carl Baker, and which was being transported in said truck from Atlanta, Georgia, to Abingdon, Virginia, and also the right of Dr. R. O. Glenn to the possession of said truck for the purpose of enforcing a lien upon the same to satisfy a note executed to him by McQueen. All the foregoing property was seized by the sheriff of Johnson County as the chief law officer of said county, upon the ground that the named persons were engaged in the transportation of intoxicating liquors in violation of law. The property in question was turned over to Geo. F. McCanless, Commissioner of Finance and Taxation of the State, by the sheriff and was being held by him when McQueen, Baker, and Glenn filed their petition seeking to repossess said property. There was a hearing before the Commissioner as pro-

vided by law, resulting in the denial of their rights to the property and a dismissal of the petition. Thereupon the said petitioners, by proper proceeding in the Circuit Court, obtained a *writ of certiorari* and *supersedeas* directing the Commissioner to file all pleadings, exhibits, records, transcript of the testimony, and all papers pertaining to the cause. Upon a full consideration of the record, the Circuit Court sustained the contention of petitioners, holding (1) that Chapter 49, of the Public Acts of 1939 did not authorize the seizure of the truck and whiskey as contraband property, as the same was being lawfully used in interstate commerce at the time of its seizure by the sheriff; and (2) that the legislature was without authority to delegate to the Commissioner of Finance and Taxation the power to make and promulgate Rule 33, governing the transportation of intoxicating liquor in Tennessee.

The Commissioner excepted to said judgment and moved the Court for a new trial, which motion was overruled, and an appeal was perfected to this Court. The several assignments of error relate to error of the trial judge in construing the above mentioned statute and Rule 33 which was made and promulgated pursuant to the provisions of said statute.

Chapter 49, Public Acts of 1939, is an act to regulate and control the manufacture and sale of alcoholic beverages in the state and to provide for the taxation thereof. Under said act the Commissioner of Finance and Taxation is designated as the proper state official to administer the law. Section 19 of the Act provides:

"Any vehicle not a common carrier which may be used for transportation for the purpose of distribution, gift or sale of unstamped alcoholic beverages shall likewise be subject to confiscation and sale in the same manner as

above provided. Provided further, that should any unstamped alcoholic beverages be found in any vehicle the same shall be *prima facie* evidence that it was there for gift, sale or distribution.''

Section 4, subsection 3(b), provides that the Commissioner shall have authority: ''to make, promulgate, alter, amend, or repeal rules and regulations for the enforcement of this Act or the collection of all license fees and taxes, and all penalties and forfeitures relating thereto.''

It appears that approximatey twenty days prior to the seizure of the property in question the Commissioner promulgated the following rule, referred to in the record as Rule 33, which provides:

''The transportation of alcoholic beverages, as defined in Chapter 49 of the Public Acts of 1939, within, into, through, or from the State of Tennessee in quantities in excess of one gallon is permitted only in conformity with this regulation.

''Before any person shall transport any alcoholic beverages, within, into, through, or from the State of Tennessee, except by means of common carrier, such person shall post with the Commissioner of Finance and Taxation a bond with approved surety payable to the State of Tennessee in the penalty of $1,000.00 upon condition that such person will not unlawfully transport or deliver any alcoholic beverages within, into, through, or from the State of Tennessee, and evidence that the required bond has been posted shall accompany the alcoholic beverages at all times during transportation.

''Provided, however, that no such bond shall be required of any person licensed under Chapter 49 of the Public Acts of 1939 to sell alcoholic beverages at wholesale when such alcoholic beverages are being transported in a vehicle belonging to the licensee.

"Where alcoholic beverages are desired to be transported within, into, through or from the State of Tennessee, such transportation shall be engaged in only when in accordance with the provisions of these regulations:

"(a)   There shall accompany such alcoholic beverages at all times during transportation, a bill of lading or other memorandum of shipment signed by the consignor showing an exact description of the alcoholic beverages being transported; the name and address of the consignor; the name and address of the consignee; the route to be traveled by such vehicle while in Tennessee and such route must be the most direct route from the consignor's place of business to the place of business of the consignee.

"(b)   Vehicles transporting alcoholic beverages shall not vary from the route specified in the bill of lading or other memorandum of shipment.

"(c)   The name of the consignor on any such bill of lading or other memorandum of shipment shall be the name of the true consignor of the alcoholic beverages being transported and such consignor shall only be a person who has a legal right to make such shipment. The name of the consignee on any such bill of lading or memorandum of shipment shall be the name of the true consignee of the alcoholic beverages being transported and who has previously authorized in writing the shipment of the alcoholic beverages being transported and who has a legal right to receive such alcoholic beverages at the point of destination shown on the bill of lading or other memorandum of shipment."

Before considering the legal questions raised in the assignments of error, it is important to state some of the determinative facts. All the petitioners reside in Johnson County. Petitioner McQueen, who is principally en-

gaged in farming and hauling lumber, hired his truck to Baker for the purpose of moving a family from Johnson County to Atlanta, Georgia. While in that city he purchased one hundred and forty-four cases of whiskey and, according to what is claimed to be a bill of lading, it was consigned to Baker and one Joe Henry of Abingdon, Virginia. When he was in Tennessee, within approximately fifty miles of the Tennessee-Virginia line, the truck was wrecked. Petitioner Baker sent word to McQueen of his trouble and called for his assistance. The sheriff being informed of the accident went to the scene, arrested Baker, confiscated the whiskey, and turned it over to the State Commissioner of Finance and Taxation.

In *Casone & Robilio v. The State*, an unpublished opinion, where the facts were the same as found in the instant case, it was held that Chapter 49 of the Acts of 1939 did not confer authority upon a sheriff to seize such a consignment of whiskey, it being a transportation in interstate commerce. In that case, however, the Court made the following observation:

"Chapter 49, Acts of 1939, Section 4(1) (a), empowers the Commissioner of Finance and Taxation to regulate the transportation of alcoholic beverages within this State, *but our attention is called to no regulation of that official which would reach an interstate shipment. Such a regulation is entirely permissible under authority of Duckworth v. State of Arkansas,* U. S. Sup. . . . An appropriate regulation as to carriers of intoxicants would relieve the State of the difficulty met with in cases of this character." (Italics ours.)

The *Duckworth Case* is reported in 314 U. S. 390, 62 S. Ct. 311, 86 L. Ed. 294, 138 A. L. R. 1144.

The Commissioner, evidently acting upon the foregoing suggestion, made and promulgated Rule 33 which petitioners now say is invalid on the ground that the Commissioner had no authority under the statute to make and enforce such a regulation.

We adhere to the long established principle that "the power conferred upon the legislature to make laws cannot be delegated by that department to any other body or authority." Cooley's Constitutional Limitations, Volume I, Chap. V, page 224. In conferring authority, however, upon an administrative officer or agency to enforce and administer a particular statute, the legislature thereby only gives direction to such agency in order to more efficiently carry into effect the statute which expresses the public policy of the State. This is not a delegation of legislative power. The reason is well expressed by Mr. Cooley (Volume I, Chap. V, page 230) in the following language:

"If this could not be done there would be infinite confusion in the laws, and in an effort to detail and to particularize, they would miss sufficiency both in provision and execution."

The author further says (pages 231, 232):

"Boards and commissions now play an important part in the administration of our laws. The great social and industrial evolution of the past century, and the many demands made upon our legislatures by the increasing complexity of human activities, have made essential the creation of these administrative bodies and the delegation to them of certain powers. Though legislative power cannot be delegated to boards and commissions, the legislature may delegate to them administrative functions in carrying out the purposes of a statute and various

governmental powers for the more efficient administration of the laws.''

In considering the validity of a particular rule, we must ever bear in mind the evil which the statute seeks to control, if not to eliminate. The legislature could not be expected to provide against every subtle invention and contumacious evasion of the law on the part of those who are engaged in the business of dealing in intoxicating beverages, nor provide a particular remedy for every such evasion. As to the legality of rule-making in general, Mr. Sutherland in his work on Statutory Construction, Volume I (3rd Ed.), page 82, Sec. 317, says:

''In practically every jurisdiction courts have permitted almost unlimited delegation of discretion in the making of legislative rules in the interest of public health, safety and morals. In the case of liquor regulation, the regulation of pool halls and similar establishments, the courts have sometimes indicated that, as these businesses operated only through public sufferance, they could not be heard to complain of inadequate standards for the delegation of power regulating their activity.''

The question now before us was given full consideration by the Supreme Court of the United States in *Duckworth* v. *State of Arkansas, supra,* and also in *Carter* v. *Commonwealth of Virginia,* 321 U. S. 131, 64 S. Ct. 464, 88 L. Ed. 605. In these cases the right of an administrative agency or official to make and promulgate a rule affecting the transportation of intoxicating beverages was fully sustained. In the *Duckworth Case* (314 U. S., page 396, 62 S. Ct. at page 314, 86 L. Ed. 294, 138 A. L. R., page 1147) it was said:

''The efforts at effective regulation, state and national, of intoxicating liquor, evidenced by the long course of litigation in this Court, have not left us unaware of the

peculiar difficulties of controlling it or of its tendency to get out of legal bounds. The present requirement of a permit is not shown to be more than a means of establishing the identity of those who are to engage in the transportation, their route and point of destination, and affords opportunity for local officials to take appropriate measures to insure that the liquor is transported without diversion, in conformity to the permit.''

See also annotations at page 1151 of 86 L. Ed.

In *Carter* v. *Commonwealth of Virginia, supra,* it appears that the Alcoholic Board of Virginia, which was authorized to administer the law providing for the sale and distribution of intoxicating liquor, made a rule as to the transportation of whiskey which is in all respects the same as Rule 33. In sustaining the validity of the rule, it was said (at page 135 of 231 U. S., at page 467 of 64 S. Ct., 88 L. Ed. 605):

''We have recognized that the several states in the absence of Federal legislation may require regulatory licenses for through shipments of liquor in order to guard against violations of their own laws.''

In the *Carter Case* the Court points out that the State of Virginia is not primarily interested in giving aid to the enforcement of the laws of another state, but only with the proper regulation of the transportation of whiskey within its own borders to the end that it may not be diverted and sold in violation of the state statute. We think Rule 33, which the Commissioner invokes in the instant case, was adopted with the same purpose in view and it is a reasonable exercise of administrative authority under our statute.

The petitioners assail Rule 33 as being unreasonable for the reason that it was not published by the Commis-

sioner and hence appellee Baker had no opportunity to become acquainted with its provisions.

██ While it may be true that there was no formal publication in the public press, it does not appear from the record that the parties here affected did not know about it. There is no averment in the petition filed with the Commissioner, nor in the petition filed in the Circuit Court, disavowing any knowledge of the existence of the rule; nor is there any evidence of a lack of knowledge. They were content to rely solely upon their insistence that the rule was made without authority and is a violation of a constitutional right. There is no contention here that petitioner Baker complied with Rule 33 in any respect. We are therefore constrained to hold that the Commissioner was authorized to make and promulgate Rule 33 pursuant to Chapter 49 of the Public Acts of 1939, and that it is not unreasonable in the administration and enforcement of said Act. It results that the judgment of the trial court is reversed and the order of the Commissioner sustained.

We next respond to the contention of Dr. R. O. Glenn that he has an interest in the truck here involved and that he acted in good faith in making the loan to A. S. McQueen; that he had no knowledge that McQueen had the reputation of being a violator of the liquor laws, and that proper inquiry was made as to his record in this regard.

The right of the petitioner in the instant case to enforce his lien against the truck in question is controlled by the provisions of Chapter 119 of the Public Acts of 1941 and especially Section 2 thereof which provides that any person seeking to regain possession of any vehicle that has been confiscated on the ground that it was or would be used in violation of the law relating to liquor, must show

by proof (1) that he has an interest in the car; (2) good faith and lack of knowledge of any prior record or reputation for liquor law violation; and (3) that he made proper inquiry of officials mentioned in the statute.

We think the evidence clearly shows that Dr. Glenn held a note for $500, executed by McQueen, and secured by a chattel mortgage to secure the payment of the note. There is a stipulation in the record as to what certain witnesses would say if called on to testify. It is stipulated that Dr. Glenn had seen the truck at the farm of McQueen and knew it was used for farming purposes; that before the loan he had never heard of McQueen being engaged in the liquor business and had no reason to believe he would use said truck in transporting liquor; that he had on occasion talked to the neighbors of McQueen and that they informed him that among them he did not have the reputation of a law violator. The stipulation recites that ''he had a conversation with Walter Stout, a constable of Butler, in Johnson County, before making the loan, and that Stout advised him that McQueen was not engaged in the liquor business and not using his truck for said purposes.'' It is important to note in this connection that Constable Stout (according to the stipulation) would say ''that his duties as constable of the Fifth Civil District of Johnson County do not pertain to the enforcement of the liquor laws.'' It is conceded that the petitioner did not make any inquiry at the sheriff's office as to the reputation of McQueen, or of any chief of police, or any principal Federal Internal Revenue officer engaged in the enforcement of the liquor laws, or ''other principal local or federal enforcement officer.''

We think the record shows that McQueen had the reputation of being a liquor law violator before Dr. Glenn

made this loan and took the chattel mortgage on his truck. Sheriff Dillon stated he had that reputation. While Dr. Glenn says his (McQueen's) neighbors and the constable informed him that he did not have such a reputation, it does not affirmatively appear that they knew his reputation in this regard. The neighbors he claimed to have conversed with were not introduced as witnesses to prove a good reputation. It thus appears that he did not make any inquiry of persons who claimed to have known the reputation of McQueen. Moreover, we cannot overlook the fact that prior to February, 1942, a truck of the same model, make, and motor number as the one now involved was returned to McQueen when the Court sustained his contention that at the time it was confiscated it was being used to transport liquor in interstate commerce.

Under the facts disclosed in the record, we are constrained to hold that Dr. Glenn, in order to enforce his lien, was required to comply with the Act of 1941; that he did not make any inquiry of the officials designated by the statute prior to making the loan. While a constable in a rural community, whose duties pertain to the enforcement of the liquor laws, might be considered a "principal local law enforcement officer" as provided by the statute, we are not justified in holding that an inquiry made of the constable in the instant case is a compliance with the statute because it plainly appears that his duties did not pertain to the enforcement of the liquor laws.

In the case of *Dolen* v. *State*, 181 Tenn. 31, 178 S. W. (2d) 387, 389, we dealt with a similar problem wherein an effort was made to regain possession of a confiscated vehicle to enforce a lien against it. It was there held that Section 2 of the Acts of 1941 was mandatory in that

the party must show by proof: "(a) interest in the car, (b) good faith and lack of knowledge of any prior record or reputation for liquor law violation, and (c) *inquiry of designated officials.*"

█ Under the stipulation we think the petitioners McQueen and Dr. Glenn have wholly failed to show a compliance with the foregoing statute. The facts and circumstances of the instant case clearly show the wisdom of the Legislature in passing the Act of 1941 above referred to requiring that all persons dealing with property owned and operated by suspected liquor law violators should make inquiry of certain designated officials. The record here shows that the sheriff knew all about McQueen and that, had Dr. Glenn inquired of him as provided by the act, he would have learned of McQueen's reputation. Considering the stipulation as to what McQueen would say, there is nothing to show that he did not know of Baker's character as a bootlegger. He does not contend that he had no knowledge that Baker intended to bring back a load of whiskey from Atlanta, Georgia, on his return journey.

It results that the assignments of error are sustained. The judgment of the trial court is reversed and the case dismissed.