DEPARTMENT OF PUBLIC WELFARE *v.* NATIONAL HELP "U" Ass'n *et al.*

(*Nashville*, December Term, 1953.)

Opinion filed July 23, 1954.

Louis G. LaVecchia and H. Frank Taylor, both of Nashville, for plaintiff in error.

Bess Blake, of Nashville, for defendant in error.

Mr. Justice Burnett delivered the opinion of the Court.

The Department of Public Welfare of the State of Tennessee filed its original bill pursuant to Chapter 228 of the Public Acts of Tennessee for 1953, which Act authorizes said department to license and regulate child welfare agencies. The defendant, The National Help "U" Association, filed a demurrer to this bill on many grounds. The bill in the main sought to enjoin the de-

fendant from operating a child caring institution. The manager and principal officer of the defendant association was made a party to the bill. He likewise filed separate demurrers to the bill but on the same ground as the association.

The Chancellor in an able and well-reasoned opinion (found in the record) overruled the demurrer and in apparently every instance convinced and satisfied the defendants of the correctness of his opinion except as to the proposition that the bill attempted a delegation of legislative power to the Department of Public Welfare. We say this because the only error assigned and the only question briefed is this question. The appellants say:

"The said Act is unconstitutional for the reason that no reasonable guides or standards are furnished by the Act to the Public Welfare Department to guide them in setting up rules and regulations in the premises, and there has, therefore, been an unconstitutional delegation of legislative authority to the said Department."

It is further said in the brief and argument of the appellant that:

"The legislature may declare the policy and pass the law, and may, within reasonable limits, provide for the administration of the law, but in the field of regulation, the legislature itself must prescribe the standards or norms through which the subject matter of the law must be administered; these standards or norms cannot be prescribed by the administering authority."

Much complaint is had and the argument seems to be directed toward Section 4 of Chapter 228 of the Public Acts of 1953 which is as follows:

Section 4. Be it further enacted, That all child welfare agencies, as defined in Section 1 of this Act shall be licensed annually by the department, said license to be based on standards developed in accordance with the following six points of excellence:

"(1) The present need for the proposed child-welfare agency.

"(2) The good character and intention of the applicant.

"(3) The adequate financing of the organization.

"(4) The capability, training and experience of the workers employed.

"(5) The facilities for and the methods of care provided, and the consideration of the best interest of the child and the welfare of society in any placements of children to be made.

"(6) The probability of permanence of the child welfare agency.

\* \* \* \* \* \*

"The department shall develop and publish standards for license for each child welfare agency defined in Section 1 of this Act."

■ Under the title Constitutional Law of American Jurisprudence in Volume 11 of that work, Section 240, page 955, the authors in reference to the power to promulgate rules and regulations have this to say:

"The general principle governing the conditions under which the power to make rules and regulations may be delegated has been stated as follows: A legislature, in enacting a law complete in itself and designed to accomplish the regulations of particular matters falling within its jurisdiction, may expressly authorize an administrative commission, within def-

inite valid limits, to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose."

There are many cases cited as authority for this very true and applicable statement. We think that our cases of *McQueen* v. *McCanless*, 182 Tenn. 453, 460, 187 S. W. (2d) 630; *Large* v. *City of Elizabethton*, 185 Tenn. 156, 203 S. W. (2d) 907, and others that might be found are likewise precedents to be followed under this general rule.

In considering the assignment of error before us it might be well to keep in mind a quotation that this Court adopted as a correct statement of the law in *State ex rel. Llewellyn* v. *Knox County*, 165 Tenn. 319, 54 S. W. (2d) 973, 976, when it said:

"'But any power not legislative in character which the legislature may exercise it may delegate, and before a court can properly hold that a statute is void as unconstitutionally delegating legislative power, it must clearly appear that the power in question is purely legislative.'"

After a full consideration of the Act we do not think that the power conferred upon the Department of Public Welfare is legislative power. It seems to us that the power here granted is a natural power to give this department who have under their care and consideration the welfare of these unfortunate children. Obviously the Legislature in its manifold duties could not take up everything that is necessary in the governing of a child welfare agency or of these unfortunate children and spell out what is to be done in each instance. Of course the Legislature cannot delegate the exercise of its discretion as to what the law shall be, but it certainly in modern

times may confer a discretion in the administration of the law. In conferring this discretion it must create an agency that has the means, etc., of administering this law and confer some discretion in this agency. As an illustration of such an act the cases of *Scott* v. *Marley,* 124 Tenn. 388, 137 S. W. 492; *Samuelson* v. *State,* 116 Tenn. 470, 95 S. W. 1012 and *Leeper* v. *State,* 103 Tenn. 500, 53 S. W. 962, 48 L.R.A. 167, are illustrative. Then too this authority to make rules and regulations which is conferred upon an administrative agency is for the purpose of the enforcement of the law and is not obviously of an exclusive legislative power but is more or less administrative in nature. *Marshall* v. *State,* 180 Tenn. 9, 13, 171 S. W. (2d) 269; *McQueen* v. *McCanless,* 182 Tenn. 453, 187 S. W. (2d) 630 and *Richardson* v. *Reese,* 165 Tenn. 661, 57 S. W. (2d) 797. Then we have that line of cases in this State which have been so well collected by Mr. Justice Tomlinson in *Crewse* v. *Beeler,* 186 Tenn. 475, 212 S. W. (2d) 39, which hold that the Legislature of this State might constitutionally delegate administrative powers to be exercised upon discretion, to individual officials or boards. See the many cases there cited of reorganization of county administrative boards and offices.

Under Section 4 of the Act above quoted it is provided among other things that all child welfare agencies ''shall be licensed annually by the department, said license to be based on standards developed in accordance with the following six points of excellence''. We find from reading this section of the Act that the department is directed to develop and publish standards in conformity with the points of excellence mentioned in the quotation from the Act. Such standards are definite and clear, though they leave the details of the requisites

14

for the issuance of license to the discretion of the department. These details clearly are ministerial matters and may properly be delegated. It seems from our examination of the authorities that the courts generally follow such reasoning. The Supreme Court of the United States in *Opp Cotton Mills* v. *Administrator of Wage and Hour Division,* 312 U.S. 126, 61 S. Ct. 524, 532, 85 L. Ed. 624 said:

"While fact finding may be and often is a step in the legislative process, the Constitution does not require that Congress should find for itself every fact upon which it bases legislation. 'It is a constitution we are expounding * * * intended to endure for ages to come, and consequently, can be adapted to the various crises of human affairs'. *McCulloch* v. *Maryland,* 4 Wheat. 316, 407, 415, 4 L. Ed. 579. In an increasingly complex society Congress obviously could not perform its functions if it were obliged to find all the facts subsidiary to the basic conclusions which support the defined legislative policy in fixing, for example, a tariff rate, a railroad rate or the rate of wages to be applied in particular industries by a minimum wage law. The Constitution, viewed as a continuously operative charter of government, is not to be interpreted as demanding the impossible or the impractical. The essentials of the legislative function are the determination of the legislative policy and its formulation as a rule of conduct. Those essentials are preserved when Congress specifies the basic conclusions of fact upon ascertainment of which, some relevant data by a designated administrative agency, it ordains that its statutory command is to be effective."

The subject of the Act in question is child caring institutions and as found by the Chancellor the provisions of the Act are clearly germane to the subject. The Act provides for the regulation of the practice of private individuals who engage in the business of placing children for adoption or temporary care and is clearly outlined in the Act and shows that the purpose of the Act is the regulation of any facility dealing with the welfare of children. The details of the administration of the Act are obviously and naturally left with the department of welfare under whose supervision these different agencies are placed. The question of setting forth what is necessary and the standards to be attained by the different agencies desiring to take children for adoption, etc., of course is not spelled out in the Act and this too to us is an administrative matter that is best to be worked out by the department.

In Section 5 of the Act the applicant who desires a license as one of these adoptive or child caring agencies, if they are not satisfied with the decision of the Department of Welfare in denying them a license, then the licensee, may by pursuing certain administrative procedure appeal to the Circuit Court of the County where the agency is located and be heard. Thus it is seen that the defendant in this case was afforded a full and adequate remedy, safeguards and provisions were put in the Act so that if it were so desired the Department of Welfare could not arbitrarily make rules and regulations, etc., that were beyond the pale. It thus for the reasons herein expressed seems to us that the Act in question is not conferring legislative powers on the Department of Public Welfare but is vesting in this department certain powers which may be carried out for the

benefit of the child and at the same time those agencies desiring to adopt a child are secured a fair and reasonable hearing. It results that the decree of the Chancellor is affirmed with costs.