**John GRIFFIN, Appellant,**

**v.**

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee, at Jackson.

Jan. 3, 1980.

John C. Nowell, Jr., Tom W. Crider, Trenton, for appellant.

William M. Leech, Jr., Atty. Gen., William M. Barrick, Asst. Atty. Gen., Nashville, Tenn., A. H. Schoonover, Clayburn Peeples, Asst. Dist. Attys. Gen., Trenton, for appellee.

OPINION

TATUM, Judge.

At a bench trial, the defendant, John Griffin, was fined $50.00 after being found guilty of violating regulations promulgated by the Tennessee Commissioner of Agriculture and the State Veterinarian. The main thrust of the several issues presented on this appeal is an attack on the validity of the regulations. We resolve all issues in favor of the State and affirm the conviction.

The Statute under which the regulation was promulgated is T.C.A. § 44–407 which provides in relevant part:

> The commissioner of agriculture and the state veterinarian shall have the general supervision of all domestic animals . . . within . . . the state, and they are empowered to establish quarantine against any animal . . . and may make such rules and regulations against the spread and for the suppression of any communicable disease or diseases as in their judgment may seem necessary and proper . . .

Pursuant to the above code section, Rule 0080–2–1–.13, relating to the disease equine infectious anemia (EIA), commonly referred to as swamp fever, was promulgated by the Commissioner and State Veterinarian in the following language:

> 0080–2–1–.13 TENNESSEE REGULATIONS REGARDING HANDLING OF POSITIVE EQUINE INFECTIONS ANEMIA–AGAR GEL IMMUNODIFFUSION HORSES AND OTHER EQUIDAE.
>
> (1) Horses or other equines found positive to official agar gel immunodiffusion test for equine infections anemia (EIA–AGID) shall be subjected to a confirmatory retest by a regulatory veterinarian.
>
> (2) Animal positive on confirmatory test may be:
>
> (a) Euthanized by owner or his private veterinarian within sixty (60) days with certification of euthanasia by an accredited veterinarian or regulatory veterinarian or inspector, or
>
> (b) Freeze-branded on the left side of the neck with the character 63A and the official reactor number of the animal. This branding shall be carried out by a regulatory veterinarian or inspector.
>
> (3) When a previously positive animal is found negative to official confirmatory test, all equines associated with that animal on the premises (farm, pasture, or stable) shall be officially tested by a regulatory veterinarian.
>
> (4) Officially branded reactor horses shall be put under written quarantine until destroyed or dead of natural causes. If no other horses are located within 250 yards without common shade, pasture quarantine will suffice. If there are other horses sharing the stable or farm, a screened stall shall be required.
>
> (5) Foals nursing reactor mares shall be considered quarantined with their dams. Weaned foals may be released if negative to EIA–AGID test after a 90-day period of isolation from their dam and other equines.
>
> (6) Movement of quarantined animals shall be made only on written permit by the Tennessee State Veterinarian or his representative.
>
> Authority: T.C.A. Sections 44–407 and 44–413. Administrative History. Rule filed June 25, 1975, effective July 25, 1975.

The defendant owned three horses found positive to an agar gel immunodiffusion test, most commonly referred to as the "Coggins Test," administered by his private veterinarian. A confirmatory official retest was made by a regulatory veterinarian which was also positive for swamp fever. After the positive retest was made known to the defendant, he refused to brand or quarantine the horses as required by the regulation; he does not dispute the finding that he refused to comply with the regulation.

■ Issues for review 1, 4, and 8 challenge the validity of the regulation as being unreasonable and arbitrary. We agree that a regulation which is arbitrary and unreasonable is void as a matter of law. *Bishop v. State*, 122 Tenn. 729, 127 S.W. 698, 701, 65 A.L.R. 528 (1930); *Thompson v. Consolidated Gas Utilities Corp.*, 300 U.S. 55, 57 S.Ct. 364, 81 L.Ed. 510 (1937). It is settled that a regulation promulgated by the Commissioner of Agriculture pursuant to a statute empowering him to make such regulations to prevent the spread of diseases in domestic animals, is valid, and is a reasonable exercise of the power granted. *Bishop v. State, supra.* In considering the validity of the above-quoted regulation, we must bear in mind the evil which the statute seeks to control or eliminate. *McQueen v. McCanless*, 182 Tenn. 453, 187 S.W.2d 630, 633 (1945).

Several highly qualified expert witnesses testified on behalf of both the State and the defendant at trial. We do not deem it necessary to burden this opinion by detailing the evidence of these expert witnesses. There was evidence that the defendant's horses were asymptomatic or inapparent carriers of the swamp fever disease. There was substantial evidence that swamp fever is a communicable disease and that the Coggins Test can be relied upon to identify infected horses. There are several means of communication of the disease, but the most common method is the transfer of blood from an infected animal to a healthy animal by bite of the horsefly. Quarantine of infected horses is effective in preventing spread of the disease and the use of a brand is necessary to prevent violation of the quarantine and the introduction of infected animals into commerce. There was also substantial evidence that an inapparent carrier can transmit the disease to healthy horses, represents a risk to other horses, and if not identified and quarantined, can spread the disease.

The views of the defendant's experts differed in some respects from those of the State's. All of the experts agree that swamp fever is a communicable disease in at least two classes, the acute and subacute. There is a sharp difference of opinion with respect to the third class, the inapparent carrier.

■ Though experts may differ and alternatives to the agency rule may be thought reasonable by many experts in the field, courts will not disturb a reasonable decision of the agency with expertise, experience, and knowledge, in the appropriate field. This principle was expressed by the Supreme Court of the United States in *Mourning v. Family Publication Services, Inc.*, 411 U.S. 356, 371, 93 S.Ct. 1652, 1662, 36 L.Ed.2d 318, 331 (1975):

> "We have consistently held that where reasonable minds may differ as to which of several remedial measures should be chosen, courts should defer to the informed experience and judgment of the agency to whom Congress delegated appropriate authority."

■ We find abundant evidence that the regulation is responsive to the evil sought to be controlled or eliminated by T.C.A. § 44–407 and that the control measures established by the regulation are reasonable. It is not the function of this court or the trial court to substitute its judgment for that of the Department of Agriculture officials or dictate to the agency what rules they should promulgate. Absent a finding that the regulation is arbitrary and unreasonable, we must recognize the validity of the regulation. We must hold the regulation to be constitutional, reasonable, and binding on the defendant and resolve issues 1, 4, and 8 in favor of the State.

In issues 2 and 3, the defendant says that freeze branding the neck of his horses deprived him of his property and the use thereof without compensation or due process of law. The defendant cites no authority in support of this proposition.

■ As stated above, the reason for requiring branding of infected animals is to enforce quarantine and prevent the intro-

duction of the diseased animals into commerce; this carries out the legislative mandate for the Commissioner of Agriculture to promulgate "regulations against the spread and for the suppression of any communicable disease." The regulation is within the police power of the State and the question of whether the owner of the animal is entitled to damages as a result of the branding should properly be presented in a civil action for damages. Even if the defendant is entitled to damages, this would not excuse him from penal liability for failure to comply with the valid regulation. We note, however, that unless the animals are actually appropriated by the State, the Legislature may constitutionally order the destruction of diseased animals without payment of any compensation. *Knox County v. Kreis,* 145 Tenn. 340, 343, 236 S.W. 1 (1922).

Issue number 6 is that the trial court erred in "holding the testing of defendant/appellant's horses was done in a legal manner and constitutional manner when defendant/appellant was not advised of the consequences of his acts and the consequences of a positive Coggins, prior to the testing of his horse." The defendant does not point out any authority to support the proposition that an individual must be advised that a horse found to be infected with swamp fever must be branded and quarantined. We know of no authority for this proposition and therefore, issue for review number 6 is overruled.

Issue number 5 is that the trial court erred in "not holding that the search was an illegal entry and search as to the defendant/appellant's horses." The argument in the defendant's brief does not set forth his contentions with respect to the issues presented in compliance with T.R.A.P. Rule 27(a)(7). A general argument is made with no indication of what portion of the argument is intended to be applicable to a specific issue; thus we were required to reread the entire argument in dealing with each issue. We are unable to determine from the brief specifically what the defendant refers to as a "search," unless he is referring to the official confirmatory Coggins' retest. In any event, no objection was made at the trial or pre-trial to suppress any evidence obtained through an illegal search. In the absence of an objection to the admission of the evidence, the question of the legality of a search is foreclosed. *State v. Waycaster,* 566 S.W.2d 846, 847 (Tenn.1977); *Hill v. State,* 513 S.W.2d 142, 143 (Tenn.Cr.App.1974).

Finally, the defendant says that the rules and regulations as to freeze branding are unconstitutional as being ex post facto as to a stud and one mare of the defendant. The defendant asserts that an "older stallion" was tested prior to the effective date of the regulations and, therefore, that the regulations were ex post facto as to that stallion. He further states that because of the testing of the "older stallion," the three mares in question in this case were tested. He theorizes that the regulations were ex post facto as to the "older stallion" and hence, the testing of the three horses involved is "fruit of the poisonous tree."

The definition of ex post facto laws is discussed in *Davis v. Beeler,* 185 Tenn. 638, 207 S.W.2d 343, 345 (1947). The regulation in question does not penalize the buying, owning, or possessing a horse infected with swamp fever. Only the horse owner's refusal to comply with the regulations, after they had been promulgated, is penalized. The defendant was convicted of his deliberate and obstinate refusal to abide by the regulations after they became effective; no act for which he was convicted was committed prior to the effective date of the regulations. No act of the defendant committed prior to the effective date of the regulations was in any way aggravated, changed, or affected.

The defendant has attached an article from the November 1978 issue of the Journal of Equine Medicine and Surgery, for our consideration. This article was publish-

ed after the trial of the case. The State has moved that it be stricken.

 The article contains the opinion of the writers concerning the identical proposition upon which much expert testimony was heard at trial. This article was submitted to us as additional evidence. Although the article, if considered, would not change the disposition of this case by this court, we sustain the State's motion. This being an appellate court, we are confined to the evidence heard and preserved in the trial court. T.R.A.P. 13(c). Moreover, this evidence is hearsay, and would not be considered even in the trial court.

The judgment of the court below is affirmed.

DWYER and O'BRIEN, JJ., concur.