**BROWN-FORMAN DISTILLERS CORPORATION,**
Plaintiff-Appellant,

v.

**Honorable Martha B. OLSEN, Commissioner of Revenue of the State of Tennessee; Honorable William M. Leech, Jr., Attorney General of the State of Tennessee; Beverage Control, Inc.; United Liquors Corporation of Chattanooga; Triple "C" Distributing Company, Defendants-Appellees.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

June 1, 1984.

Certiorari Denied by Supreme Court Aug. 27, 1984.

Joel M. Leeman, Gullett, Sanford & Robinson, Nashville, Morton Siegel, Siegel, Denberg, Vanasco, Shukovsky, Moses & Schoenstadt, Chicago, Ill., for plaintiff-appellant.

Charles L. Lewis, Asst. Atty. Gen., Nashville, for defendants-appellees Martha B. Olsen and William M. Leech, Jr.

John K. King, Morton, Lewis, King & Kries, Knoxville, for defendants-appellees Beverage Control, Inc. and Triple "C" Distributing Co.

J. Jerry Foster, Chattanooga, William Thomas McHugh, Tune, Entrekin & White, Nashville, for defendant-appellee United Liquors Corporation of Chattanooga.

## OPINION

TODD, Presiding Judge.

This is a consolidation of three proceedings for judicial review of administrative decisions of the Tennessee Department of Revenue denying the petitions of the plaintiff for permission to transfer the distribution of certain brands of liquors from certain wholesalers to other wholesalers.

The three original applications were for the following transfers:

1. "Canadian Mist" and "Southern Comfort" from United Liquors Corporation to Athens Distributing Company.

2. "Southern Comfort" from Triple C Distributing Company to D. & V. Distributing Company.

3. "Canadian Mist" from Beverage Control, Inc., to D. & V. Distributing Company.

In addition to the request for permission for transfers, plaintiff requested a ruling of the department regarding the validity of the departmental regulation requiring permission of the department before transferring a brand from one distributor to another. The department ruled that the regulation was valid and denied permission for each of the intended transfers.

Upon appeal to the Chancery Court, the Chancellor affirmed; and plaintiff has appealed to this Court presenting issues for review as follows:

1. Statutory authority of Department

2. Constitutionality of Statute

3. Procedural Constitutionality of Regulation

4. Impairment of contract rights by Regulation

5. Conformity of present decision with Regulation and Administrative Procedures Act

The first four issues challenge the validity of Department of Revenue Rule No. 1320-4-6-.07 (generally designated in this proceeding as "Rule 7") which reads in pertinent part as follows:

(3) No manufacturer or importer shall be permitted to transfer a brand from one wholesale distributor to another without written approval of the Commissioner. Requests for approval of a transfer must at the same time be sent to the wholesale distributor in whose name the brand is then registered.

After due consideration, the Commissioner shall either approve or disapprove the transfer. If the Commissioner disapproves the transfer, the brand shall remain in status quo. After any such disapproval, failure on the part of any manufacturer or importer to ship his wholesaler a reasonable amount of the brand sought to be transferred will result in such manufacturer or importer not being allowed to register or distribute in this state any brand(s) manufactured or im-

ported by him and will cause any containers of such brands in this state to be subject to confiscation as provided above.

(a) Approval for transfers of brands shall be given by the Commissioner only if it is found by him that the transfer is being proposed in good faith and for good cause and for no other reason.

(1) "Good Faith" shall mean the duty of the manufacturer or importer and a Tennessee wholesaler and all officers, employees or agents thereof to act in a fair and equitable manner toward each other.

(2) "Good Cause" shall include:

(i) Failure of a wholesaler to substantially comply with the provisions of a contract or understanding with a manufacturer or importer, which provisions are both essential and reasonable or use of bad faith on the part of a wholesaler in carrying out the terms of a contract or understanding.

(3) "Good Cause" shall not include failure or refusal, on the part of the wholesaler, to engage in any trade practices, conduct or activity which may result in a violation of any state or federal law or regulation.

Appellant first insists that the Department of Revenue has no authority to adopt Rule 7.

The interpretation of the statute relied upon by the Department requires a consideration of the history of the regulation of sale of alcoholic beverages in Tennessee since the repeal of the 18th Amendment of the United States Constitution, effective December 5, 1933, at which time the Federal Government yielded to the states full governmental power to prohibit or regulate intoxicating liquors.

By chapter 49 of the Public Acts of 1939, the Tennessee General Assembly legalized the sale of alcoholic beverages in counties where its sale should be approved in "Local Option Elections". The same statute provided:

The Commissioner [*of Finance and Taxation] shall have and exercise the following functions, duties and powers, to-wit:

(b) To make, promulgate, alter, amend or repeal rules and regulations for the enforcement of this act or the collection of all license fees and taxes, and all penalties and forfeitures relating thereto.

---

(*inserted for clarity)

Thereafter the Commissioner of Finance and Taxation (predecessor of the present Commissioner of Revenue) promulgated a regulation as follows:

From and after the effective date of this regulation no wholesale liquor distributor shall add an additional brand to his stock without first securing a written approval of the Commissioner.

By chapter 257, of the 1963 Public Acts of Tennessee, the General Assembly created the Alcoholic Beverage Commission (A.B.C.). Section *14* of said statute, now codified as TCA § 57–1–209, provided:

Rules and regulations.—The commission is hereby authorized to adopt and promulgate the present rules and regulations which are in existence pertaining to alcoholic beverages, and said commission may in its discretion alter, amend or repeal any of such parts of said rules and regulations as it deems necessary.

On November 20, 1964, the A.B.C. promulgated Rule No. 0100–3–.13(7) as follows:

No manufacturer, importer, or other person shall be permitted to transfer a brand from one wholesale distributor to another without written approval of the Commission. Requests for approval of a transfer must be submitted in writing and a copy of said request must at the same time be sent to the wholesale distributor in whose name the brand is then registered.

After due consideration, the Commission shall either approve or disapprove the transfer.

By Chapter *341* Section *1*, Public Acts of 1979, the General Assembly enacted TCA

§ 57-3-301, which reads in pertinent part as follows:

Brand registration—Tax—Sale of brands of alcoholic beverages to wholesalers pursuant to contract.—(a) As used in this section "brand" means:

(1) Each and every distilled spirits or wine product bearing a distinct "brand name" or "trade name" as those terms are defined and used in the regulations regarding labeling of wines and distilled spirits promulgated by the federal bureau of alcohol, tobacco and firearms shall be considered a separate "brand" for purposes of this section.

(b)(1) There is imposed a tax of two hundred fifty dollars ($250) per annum upon each brand of alcohol beverages sold in this state, for which actual wholesale sales during the twelve (12) months immediately preceding May 22, 1979, were fifty (50) cases or more.

(2) There is imposed a tax of one hundred dollars ($100) per annum upon each brand of alcohol beverages sold in this state for which actual wholesale sales during the twelve (12) months immediately preceding May 22, 1979, were less than fifty (50) cases.

(c) No manufacturer, importer or representative shall introduce into this state any brand of alcohol beverages until such tax has been paid to the department of revenue.

(d) No wholesaler shall give an order, receive, accept or offer for sale any brand of alcohol beverages until the annual tax has been paid to the department of revenue.

(e)(1) No brand may be introduced into the state except pursuant to written contract to sell such brand in this state between the manufacturer or importer of such brand and the Tennessee wholesaler who is to sell such brand in this state. Every contract shall contain the specified area in which such wholesaler may sell such brand in any specified area. No such contract shall be for a period exceeding one (1) year unless renewed by written agreement of the parties;

(2) If any party to a contract described in subsection (e)(1) hereof fails to comply with any provision of said contract, an aggrieved party may bring an action in the circuit or chancery courts of this state;

(3) No contract shall include the entire state of Tennessee as the specified area in which such wholesaler will sell any brand. Each contract shall provide that when any location within a specified area becomes ineligible for the premises of a holder of a wholesale license as provided by law, the contract shall terminate and the manufacturer or importer shall reconsider the limits of all specified areas which include such new location.

(f) The department of revenue is authorized to promulgate rules and regulations relative to the brand registration provisions of this section.

[Acts 1979, ch. 341, § 1; T.C.A., § 57-130.]

Thereafter the Commissioner of Revenue promulgated Rule 7, quoted above.

Appellant concedes that the validity of the predecessor of Rule 7, Rule No. 0100-3-.13(7) of the A.B.C., has been upheld in *Seagram Distillers Co. v. Jones*, Tenn. App. 1976, 548 S.W.2d 667; cert. denied by Tennessee Supreme Court Feb. 7, 1977, and by U.S. Supreme Court, 432 U.S. 901, 97 S.Ct. 2943, 53 L.Ed.2d 1074 (1977). The cited decision notes that the A.B.C. regulation was a continuation of the previous regulation of the Commssioner of Finance and Taxation. In the *Seagram* opinion, this Court stated:

Thus it is seen that the Legislature gave implicit approval to the rules governing the purchase and sale of alcoholic beverages which had been promulgated prior to 1963.

Appellant insists that the *Seagram* decision was based upon the wording of TCA § 57-1-209 (quoted above) authorizing the A.B.C. to adopt "present rules and regulations which are in existence", which was an express grant of power not contained in the present statute, TCA § 57-3-301.

■ This Court does not agree with this argument. Subsection (f) of the present statute is a transfer of the rule-making power as to brand registration from the A.B.C. to the Department of Revenue. The General Assembly must be presumed to have acted with full knowledge of the existing regulatory scheme. *Equitable Life Assurance Co. v. Odle*, Tenn.1977, 547 S.W.2d 939; *Hargrove v. Newsome* 225 Tenn. 462, 470 S.W.2d 348 (1971); *McKinney v. Hardwick Clothes, Inc.*, 217 Tenn. 457, 398 S.W.2d 265 (1965). Also, the Legislature is presumed to have intended that its enactment confer some authority upon the·Department; and, in the absence of specific changes, it must be presumed that the authority to regulate brand names was transferred unchanged from the A.B.C. to the Department.

■ Appellant next relies upon other provisions of § 57-3-301 limiting contracts with wholesalers to one year, citing the general law of remedy for breach of contract, requiring that distributor's contracts contain a provision for termination and permitting reconsideration of territorial limits by the manufacturer or importer. Appellant insists that these portions of the statute evidence a legislative intent to "restore the freedom of contract between distillers and wholesalers". Appellant overlooks the history of legislative policy with regard to intoxicating liquors which has been to exercise rigid control over the distribution of what is conceived to be dangerous and which is a heavily taxed commodity. The provisions of the statute were not intended to grant any more "freedom" to the liquor industry than had previously existed. Rather, it was to facilitate the process of governmental regulation and tax collection.

■ The power to make rules regarding brand names of liquor was expressly conferred upon the Department, and the fact that the power was stated in general, rather than specific terms does not affect its validity.

■ Appellant insists that the regulation contravenes the enabling statute which re-

quires distribution contracts to be limited to a term of one year, whereas the regulation in effect requires the relationship of distiller and wholesaler to continue indefinitely until the Department approves a transfer of distributorship. This Court does not so construe the statute and regulation. The limitation of term of contract is calculated to facilitate regulation by enabling the termination of wholesalers who do not satisfactorily comply with law and regulations without destroying a valuable, long-term contract right.

Neither the law nor the regulation is intended to favor or disfavor a distiller or wholesaler, the intent being to exercise strict control over both. The mere fact that a distiller is not allowed to terminate a distributorship at will does not deprive the parties of the freedom to change the terms of their contract annually.

■ This Court agrees with the Chancellor that Rule 7 is within the broad authority vested in the Department by § 57-3-301(f).

■ Appellant next insists that Rule 7 violates the Constitution of the United States and the State of Tennessee. This insistence has heretofore been rejected in *McCanless v. Klein*, 182 Tenn. 631, 188 S.W.2d 745 (1944); *McQueen v. McCanless, Commissioner*, 182 Tenn. 453, 187 S.W.2d 630 (1944); *Terry v. Evans, Commissioner*, 189 Tenn. 345, 225 S.W.2d 255 (1949) and *Seagram Distillers Co. v. Jones*, supra.

Authorities cited from other jurisdictions do not justify this Court in ignoring plain pronouncements of our own Supreme Court.

Nevertheless, appellant insists that the regulation is invalid because it does not recite criteria for determining what constitutes "good cause" for transferring a brand from one wholesaler to another. If the regulation authorized the forfeiture of some vested right, it would be reasonable to require more specificity. However, Rule 7 does not authorize the Department to deprive anyone of any vested right. It

merely provides that the Department may allow a distiller to violate contractual rights of a wholesaler by transferring a brand to another wholesaler if "good cause" is shown, and it preserves the rights of the wholesaler to sue for breach of contract even though the Department approves the transfer. That is to say, "good cause" for purposes of approval is not necessarily "good cause" for cancelling a contract, and the decision as to "good cause" for concelling the contract is reserved to the Commission and the Courts.

In *Terry v. Evans, Commissioner,* supra, the Supreme Court quoted with approval from *McCanless, Commissioner v. Klein,* supra as follows:

"It is difficult to conceive of a regulation of the sale and distribution of intoxicating liquor which could be said to be beyond the police powers of the State. Since the power of the State to prohibit such sales altogether is beyond question, no provision for its regulation is beyond the state's power.....'A license to sell liquor is not a contract by right of property but is merely a temporary permit to do that which would otherwise be unlawful.' Or, ... 'is in the nature of a mere permit which creates no vested or property rights, and the traffic is at all times subject to the control of the State, ... in the exercise of the police power.'

"Ordinary rules of construction of statutes and ordinances with respect to their reasonableness do not strictly apply. The legislature has unlimited powers of regulation and restriction of the liquor traffic and may delegate these powers, as has been done to the commissioner. His exercise of such delegated discretion will not be lightly interfered with by the courts. It is a commonly accepted practice for the legislature, through its delegated agencies of government to establish restrictions upon sales of liquor as to territory, population, location, number of dealers, hours, and details of all kinds; all of these for the purpose of strict surveillance and control in order to minimize the evils inherent in the traffic and insure the collection of tax thereon ...

'It is everywhere now accepted that the business of dealing in intoxicating liquors is subject to the most stringent regulation as to places where it is conducted, persons who shall conduct it, and as to whether it shall be conducted at all.' "

This Court does not agree with the Chancellor that Rule 7 contains a definition of "good cause". The mere statement that "good cause" shall *include* particular conduct or shall not *include* other particular conduct does not constitute a definition of good cause. It merely includes one element and excludes another without otherwise limiting the discretion of the Department to determine "good cause" under the circumstances of each case.

Appellant complains that the regulation substitutes the judgment of the Department for that of the distiller. This Court does not agree. The regulation preserves the traditional strict regulatory scheme within which the liquor industry has long been required to operate. That scheme includes the priority of government regulation over business judgment of the liquor industry in all matters relating to the interests of the government and public.

Appellant complains of deprivation of "property rights". As stated in *McCanless, Commissioner v. Klein,* supra,

A license to sell liquor is not a contract by right of property, but is merely a temporary permit to do that which would be otherwise unlawful.

■ Thus, it may be said that the liquor industry has few "property rights" in its manner of operation.

■ Appellant complains that the Rule has the effect of making permanent its obligations under its contracts with its distributors. Such is not the case. The contractual obligations of appellant to its distributors are unaffected by the Rule. Any dispute between appellant and its distributors must be settled by the courts, not the department. However, the regulation does provide that, once the distiller has designat-

ed a particular distributor for a particular brand and has filed with the Department such designation, the same brand may not be furnished to any other wholesaler in the same territory without the permission of the Department. Appellant is not compelled to continue to furnish liquor to any distributor. Appellant is simply forbidden to furnish a new distributor without permission.

This is not deprivation of any property right held by any participant in the liquor industry.

■ Appellant complains that the Rule does not serve any public interest, but is "designed to protect the vested interests of certain distributors." Neither distillers, distributors nor retailers have any "vested interest" in the continuation of any part of their business. They are permitted to continue operation only within the strict regulation and surveillance of governmental authority. Moreover, the rule against transfer of brands is in the public interest in that it simplifies and facilitates the on-going regulation and surveilance of the industry.

Appellants' final argument is that the decision of the Department in the present cases is in conflict with Rule 7 and the Administrative Procedures Act. Appellant relies upon a portion of TCA 4–5–322 as follows:

(h) ... The Court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5) Unsupported by evidence which is both substantial and material in the light of the entire record.

Appellant takes issue with the reasoning of the administrative hearing officers that, in order to show "good cause", it was necessary for appellant to "quantify" a positive result from making the transfer or "quantify" a negative result from failing to transfer.

■ This Court agrees that it is not necessary to demonstrate a specific gain or loss in dollars and cents. However, the finding of "good cause" must be a result of subjective reasoning in which various circumstances are given such weight as the fact finder sees fit to assign. "Good cause" might be shown without specific proof of monetary loss or gain; or it might not be shown, even though monetary loss or gain were proven.

This Court considers that "good cause" means sufficient cause, and this means cause of such nature as to justify the inconvenience, and effect upon efficiency of supervision and tax collection. It is not every benefit or loss of benefit to the distiller that could or should influence the Department to agree to a change in distributors which would, for a time of transition, involve surveilance of two, rather than one distributor. Even though the transfer of warehouse stock should be instantaneous, the tracing of the origin of any item would be complicated by the fact that it could have been distributed by the predecessor or the successor wholesaler.

■ This Court agrees with appellant that the financial benefit or loss of a wholesaler should be of little or no consequence to State regulators. The fact that one wholesaler will lose some profit and another will gain is not, standing alone, a valid reason for refusing a transfer of a brand *if* "good cause" is shown. However, the mere fact that the distiller will benefit somewhat from the transfer, standing alone, is not necessarily "good cause"; for the needs, necessities, benefit and detriment to the participants must be weighed against each other and, more importantly, against the need of the State to maintain

strict and efficient regulation of and tax collection from the liquor industry.

In the present case, the background of the request for transfer is worthy of note. Appellant normally distributes all brands of each subsidiary through a single wholesaler. The brands involved in the present case were "purchased" by appellant from another distiller or importer. Prior to the purchase, they were distributed by wholesalers selected and registered with the state by the former "owner" of the brands. Upon acquiring the brands, appellant desired to remove them from the wholsaler selected by the former owner and to place them with the wholesalers who handle all other brands of this subsidiary of appellant.

Admittedly, appellant's proposal is an attractive "housekeeping" measure, to reduce the number of wholesalers to be dealt with in sales, shipping and collection. There is controverted evidence as to whether the change would tend to enhance or diminish the effectiveness of sales efforts; and no specific evidence of economic efficiency.

However, as already noted, the predominant consideration in regulation is not the benefit or detriment to the participants, but the convenience and effectiveness of regulation. The decision is a discretionary one based upon a weighing of all circumstances.

None of the grounds for reversal recited above are found in this record.

The judgment of the Chancellor is affirmed. Costs of this appeal are taxed against appellant. The cause is remanded for such further proceedings, if any, as may be necessary and proper.

Affirmed and Remanded.

LEWIS, J., concurs.

CANTRELL, J., dissents.

CANTRELL, Judge, dissenting.

I respectfully dissent from the part of the majority opinion that holds that the regulation under review does not violate both the state and federal constitutions.

I concede that there are ample precedents in this jurisdiction for holding that no provision of the state in regulating the sale of liquor is beyond the police power of the state. *Terry v. Evans, Commissioner,* 189 Tenn. 345, 225 S.W.2d 255 (1949); *McCanless v. Klein,* 182 Tenn. 631, 188 S.W.2d 745 (1944). The substance of these and other decisions is that there is no constitutional protection from the raw power of the state for anyone engaged in the business of manufacturing or distributing liquor. The reasoning is that the twenty-first amendment to the United States Constitution gave the states the power to regulate the liquor traffic, even to prohibit it altogether. If, the argument runs, the state has the power to prohibit the sale of liquor it can impose any restrictions whatever on its distribution.

However, as firmly established as these precedents are, I think it is time to reexamine them in the light of experience. We have seen in recent years in this state that the regulation of the liquor trade can be the source of enormous mischief in the hands of an arbitrary government. Arbitrary power is one of the evils that the constitutions enacted in this country were designed to eliminate. "Due process" under the federal constitution and "the law of the land" in Article I, § 8 of the Tennessee constitution are concepts that protect individuals from the unlimited power of the government. In saying that these concepts do not apply to the liquor trade we have delivered the trade entirely into the hands of the government when, as in any other trade, it should be regulated by the government with individual rights respected and protected by the courts.

The United States Supreme Court has recognized that the enactment of the twenty-first amendment did not repeal the bill of rights for those engaged in the distribution of liquor. In *Hostetter v. Idlewild Bon Voyage Liquor Corp.,* 377 U.S. 324, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964) the Court held that the State of New York

could not prohibit the sale of untaxed liquor at retail for delivery aboard airplanes headed for foreign ports. The Court said:

Both the twenty-first amendment and the commerce clause are parts of the same constitution. Like other provisions of the constitution each must be considered in light of the other, and in the context of the issues and interests at stake in any concrete case.

Thus even the commerce clause did not capsize in the wake of the twenty-first amendment.

In *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), the Supreme Court struck down an Oklahoma statute that allowed the sale of beer to a female eighteen years of age but prevented the sale to a male until he reached twenty-one. The Court recognized that the equal protection clause of the fourteenth amendment still had effect even though the subject of the state law was the distribution of liquor. The Court said:

Once passing beyond consideration of the commerce clause the relevance of the twenty-first amendment to other constitutional provisions becomes increasingly doubtful. As one commentator has remarked "neither the text nor the history of the twenty-first amendment suggests that it qualifies individual rights protected by the bill of rights in the fourteenth amendment where the sale or use of liquor is concerned." *P. Brest, Processes of Constitution Decision Making, Cases and Materials,* 285 (1975).

Therefore, I conclude that the twenty-first amendment does not give the state the arbitrary power to deal with liquor distributors in a manner that is repugnant to the due process provisions of the federal constitution or Article I, § 8 of the Tennessee constitution.

Since the regulation under consideration should be tested by due process standards, it must bear some relation to the liquor control laws and the specific evils sought to be controlled. *Brown-Forman Distributing Corp. v. Stewart,* 520 S.W.2d 1 (Mo. 1975). It must be clear enough that one may know with reasonable certainty what conduct is relevant to the provisions of the regulation. *Small Company v. American Sugar Refining Company,* 267 U.S. 233, 45 S.Ct. 295, 69 L.Ed. 589 (1925).

I think the regulation fails either test. A distiller wishing to transfer its brands from one distributor to another would find it impossible to know what must be proved in order to satisfy the good cause or the good faith requirement in the regulation.

For these reasons I would reverse the decision of the court below. Therefore, I respectfully dissent.